UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK


UNITED STATES OF AMERICA    *    Case No. 06-CR-00022(JBW)
                               *
                               *    Brooklyn, New York
                               *    January 20, 2006
     v.                          *    5:47 p.m.
                               *
PIETRO POLIZZI,                *
                               *
              Defendant.    *
                               *

* * * * * * * * * * * * * * * *


TRANSCRIPT OF CRIMINAL CAUSE FOR BAIL HEARING
BEFORE THE HONORABLE MARILYN D. GO
UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

For the Government:          ALLEN BODE, ESQ.
                                 Asst. United States Attorney
                                 United States Attorney's Office
                                 147 Pierrepont Plaza
                                 Brooklyn, NY  11201


For the Defendant:           JAN ROSTAL, ESQ.
                                 Federal Defenders of
                                 New York, Inc.
                                 16 Court Street
                                 Brooklyn, NY  11201


Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT. E.D.N.Y.
MAY 22 2006
BROOKLYN OFFICE

**Fiore Transcription Service, Inc.**
**67 Elaine Drive**
**Shelton, Connecticut 06484 (203)929-9992**

1        (Proceedings commenced at 5:47 p.m.)

2        THE COURT:  -- possible arraignment on the

3  indictment, *United States v. Pietro Polizzi*, Docket Number

4  06-CR-22.

5        Counsel?

6        MR. BODE:  Allen Bode, for the government.  Good

7  afternoon, Your Honor.

8        MS. ROSTAL:  Jan Rostal, Federal Defender's Office

9  for Mr. Polizzi.  Good afternoon.

10        THE COURT:  Good afternoon.

11        MR. BODE:  Judge, as a first order of business, I'm

12  going to hand up the arrest warrant for the defendant.

13        THE COURT:  Thank you.

14        Ms. Rostal, have you received a copy of the

15  indictment and discussed the 18 counts set forth therein with

16  your client which concern the receipt and possession of

17  images constituting child pornography?

18        MS. ROSTAL:  Yes, Your Honor.

19        THE COURT:  Does your client waive public reading

20  of the charges?

21        MS. ROSTAL:  Yes.

22        THE COURT:  Is he prepared to enter a plea?

23        MS. ROSTAL:  Not guilty at this time.

24        THE COURT:  Okay.

25        MR. BODE:  Your Honor, regarding bail, the

1    government would ask that the defendant be held on permanent

2    order of detention.   This is a crime of violence pursuant to

3    Bail Reform Act.

4          It's our position that there is both a serious risk

5    of flight and a serious danger to the community, and that

6    there is no condition or accommodation of conditions that can

7    reasonably assure both the safety of the community,

8    especially children, and the appearance of the defendant.

9          First, Your Honor, as to the danger, the government

10   would note that this is not a case where the defendant simply

11   happened upon a site.   He was a paid member of more than one

12   child pornography website.   He used credit cards to join

13   these websites.   He had a collection of thousands of images

14   of child pornography.   Believe it was over a terabyte of

15   images.   I'm not sure if that's a hundred gigabytes or a

16   thousand gigabytes, but it's a lot.

17         He confessed to both viewing and downloading child

18   pornography.   He showed the agents where the computer

19   equipment was where he kept his child pornography.   And as

20   such, we believe he's a danger to the community.

21         As to the risk of flight, the government would note

22   the preceding charge carries a five year mandatory minimum.

23   The guidelines, which albeit advisory, are approximately in

24   the 10 year range, 135 to 168 months.

25         And the defendant, although he's a United States

4

1    citizen, has substantial ties to Italy.  He was born in

2    Italy.  He has family, including his parents, who live in

3    Italy.  He speaks Italian.  So, if he were to flee to Italy,

4    he would have a soft place to land, so to speak.

5         So, it's the government's position that given this

6    combination of facts, the mandatory minimum, the serious

7    nature of this offense and this defendant's ties, that he's

8    both a danger and risk of flight.

9         MS. ROSTAL:  Your Honor, I'd ask you to follow the

10   recommendation in the pretrial services report to release Mr.

11   Polizzi on the conditions recommended there.  If this is

12   indeed a crime of violence and I'm not sure unless the

13   statute -- maybe I've missed this, but I didn't think it was

14   defined as a crime of violence.  I think that --

15        MR. BODE:  It's --

16        MS. ROSTAL:  -- it could be --

17        THE COURT:  It is.

18        MS. ROSTAL:  -- that could have changed --

19        THE COURT:  It is.

20        MS. ROSTAL:  -- and I missed that, but --

21        THE COURT:  It is.  It is.

22        MS. ROSTAL:  -- to the extent that that creates a

23   presumption which is rebuttable, it's easily rebutted here.

24   This is someone who -- I can't imagine any stronger ties to

25   the community than this man has.  He obviously has lived here

5

1    for 39 years.

2         His ties to Italy are no different than ties to --

3    that anybody has who was born in another country.  The fact

4    that he has elderly parents there doesn't make it a place

5    where there's a soft landing.  It makes it a place that is

6    some kind of ancestral home to him and nothing more.

7         He -- besides that, Italy is a country from which

8    the government could extradite even if that were a risk.  He

9    is a business owner and has been, as you can see from the

10   pretrial services report, since -- for 30 years at the same

11   pizzeria, which is a family-owned business.  The assets that

12   the family has, which are unencumbered, are quite

13   substantial.

14        He's got five children.  Three of them are in the

15   courtroom today, as well as his wife.  All of the people here

16   are willing to sign a bond and understand the risk that they

17   would be taking.

18        There's a surety report for two of the sons.  One

19   of whom makes a substantial income at a reputable law firm in

20   the city.  The other who works in the family pizzeria on the

21   books and also makes an income from that.  The third son is

22   employed in the construction business and makes $32,000 a

23   year.

24        This is a very close family and obviously the home

25   in which the Polizzi's live is the one that would be used to

1    secure the bond.

2              And the medical -- or, mental health evaluation and

3    random home and employment contacts, as well as the

4    restrictions on contact with minors and Internet access are

5    sufficient to address the government's concern about so-

6    called danger to the community, which as --

7              THE COURT:  I just --

8              MS. ROSTAL:  -- they have --

9              THE COURT:  I --

10             MS. ROSTAL:  -- articulated it --

11             THE COURT:  I agree with you, Ms. Rostal.  I just

12   have one question, given his employment --

13             MS. ROSTAL:  Uh-huh.

14             THE COURT:  -- at a pizzeria, how you propose

15   avoiding contact with minors?

16             MS. ROSTAL:  Well, I mean I think what could

17   reasonably be put in place is simply unsupervised contact

18   with minors.

19             If it's in a public place obviously with public

20   coming in and ordering, that wouldn't be unsupervised, there

21   would be other people around and I think that would be a fair

22   -- and there would be also the ability of pretrial services

23   to monitor that with random work site visits.

24             And I don't think there's any suggestion here that

25   there's --

1          THE COURT:  Yes.

2          MS. ROSTAL:  -- been any contact per se with minors

3     and, you know, another fact that I'm not sure Your Honor is

4     aware of is that Mr. Polizzi self-surrendered today to the

5     FBI.

6          MR. BODE:  Well --

7          MS. ROSTAL:  This was a --

8          MR. BODE:  -- Judge, let me stop Ms. Rostal on

9     that.  It -- he was told that he could retrieve his computer

10    equipment.  He was led to believe that he was going to get

11    his computer back, so he came to the FBI building. That was

12    done so that he didn't have to be arrested at his home with -

13    - to disturb his wife and his multiple children there.  It

14    was done --

15         FEMALE VOICE:  No.

16         MR. BODE:  -- to get him out of his home so that he

17    could be --

18         FEMALE VOICE:  I was there.

19         MS. ROSTAL:  But there were -- the computer and all

20    the rest the items were seized two months ago.  He was put on

21    notice at that time that this was a possibility, a strong

22    one, and --

23         THE COURT:  All right.

24         MS. ROSTAL:  -- and if the government felt that he

25    was such a danger, then why wait two months?  I don't think

1     that argument should be credited.

2          MR. BODE:  I understand Your Honor's ruling.  Just

3     to preserve the record, I would just note that in these cases

4     that it's traditional that we -- a forensic analysis has to

5     be done.  Even though the defendant confesses, you can't

6     arrest someone just based on a confession, as the Second

7     Circuit recently noted in the case of the doctor who was

8     traveling to Honduras.

9          I would just ask, Your Honor, although Your Honor

10    has indicated you're going to release the defendant, that it

11    be in addition to his home that his rental properties as well

12    be put up as surety --

13         FEMALE VOICE:  (Indiscernible) --

14         MR. BODE:  -- and that regarding the pizzeria, I

15    just note it is a type of location where there are likely to

16    be minors who aren't supervised by parents --

17         FEMALE VOICE:  (Indiscernible) --

18         MR. BODE:  -- which is --

19         THE COURT:  Wait, wait, wait, stop.  I -- look, I

20    think -- as I was hearing Ms. Rostal talk, I think that it --

21    really the rule is that he cannot be allowed in any room with

22    a minor at work and he's just to avoid all contact with

23    minors outside of his employment.  Does --

24         MS. ROSTAL:  Well, he has a --

25         THE COURT:  Do any of his sons have --

1    MS. ROSTAL:  -- 17 year old child.  Obviously,

2    that's --

3         THE COURT:  Okay, well, that's --

4         MS. ROSTAL:  -- different.

5         THE COURT:  -- that's different, but do any of his

6    children have children?

7         MR. BODE:  He indicated on the day of his search he

8    had a niece, Your Honor.  So we --

9         FEMALE VOICE:  No.

10        MR. BODE:  -- just asked --

11        FEMALE VOICE:  Let me get up.  You --

12        THE COURT:  Stop.  Stop.

13        FEMALE VOICE:  He lie.

14        THE COURT:  Anyway, so he's to avoid all contact

15   with minors, except I'll permit him to work and at work, the

16   -- he is not --

17        FEMALE VOICE:  I want to (indiscernible) --

18        THE COURT:  -- to be alone in any room with any

19   minor.

20        FEMALE VOICE:  This is legal?

21        THE COURT:  So, there should be -- or, more

22   accurately should -- there should be another adult with him

23   at all times where there are minors present at his place of

24   employment.

25        MR. BODE:  Regarding the issue of security, Your

1   Honor --

2            THE COURT:  Yes, I agree that all the properties

3   should be posted.

4        (Pause.)

5            MR. BODE:  Judge, Ms. Rostal and I were discussing

6   and it's the government's position and we would ask that the

7   confessions of judgement be obtained prior to the defendant's

8   release and even more important than that, the defendant's

9   passport be surrendered prior to his release.

10           I don't believe they have the passport here today,

11  but that is what the government --

12           MS. ROSTAL:  Judge, there's no basis for that.  I

13  would ask you to consider releasing him -- to release him

14  tonight.  He can file the confessional --

15           MR. BODE:  Well --

16           MS. ROSTAL:  -- judgement --

17           MR. BODE:  What --

18           THE COURT:  I --

19           MS. ROSTAL:  -- Monday.

20           MR. BODE:  What I would say --

21           THE COURT:  I --

22           MR. BODE:  -- Your Honor, as my basis, if I might,

23  the forfeiture section for property for a crime such as this

24  doesn't necessarily cover substantive assets. So if some

25  person were to liquidate properties, et cetera, the

11

1    government would have no recourse.

2            In addition, without the defendant's passport, you

3    know, we do believe he's a serious risk of flight and more of

4    a risk of flight with his passport than without.

5            THE COURT:  There certainly is a risk of flight I

6    think in this kind of case and in fact, the majority of the

7    defendants who have family do get released based on the

8    signatures of the family members.  I -- what I -- I'll

9    require that the passport be surrendered on Monday and he is

10   to remain at home.

11           Can pretrial just make random phone calls over the

12   weekend or is too late to arrange for that?

13           FEMALE VOICE:  It's probably too late to arrange

14   that.  You want (indiscernible) --

15           THE COURT:  Yes.

16           MS. ROSTAL:  I could do it, Your Honor.

17           THE COURT:  Thank you.

18           MS. ROSTAL:  Uh-huh.

19           Can we get the telephone number?  The --

20           MALE VOICE:  (Indiscernible) --

21           MS. ROSTAL:  -- of the residence.

22           MALE VOICE:  718-628 --

23           MS. ROSTAL:  718-648 --

24           MALE VOICE:  No, 628.

25           MS. ROSTAL:  -- 628 --

1       MALE VOICE:  97 --

2       MS. ROSTAL:  -- 97 --

3       MALE VOICE:  -- 33.

4       MS. ROSTAL:  -- 33.

5   (Pause.)

6       MR. BODE:  Judge, in addition, although given Mr.

7   Polizzi's finances, it appears he should retain his own

8   attorney, I would believe.

9       However, I'll -- Judge Weinstein's clerk indicated

10  they would like us to appear for initial appearance within 10

11  days.  They indicated preferably not on a Friday at 10:00

12  a.m., so I'll just ask Ms. Rostal for -- just until there's

13  new counsel, I'll --

14      THE COURT:  Sure.  It'll be set for February 2nd.

15  I guess that's -- which is the Friday.

16      Isn't that the Friday?

17      MR. BODE:  Yes, it can be any time within --

18      FEMALE VOICE:  That's Thursday.

19      THE COURT:  Does he -- or, any day of the week?

20      MR. BODE:  He said --

21      FEMALE VOICE:  Any day --

22      MR. BODE:  -- any day of the week --

23      FEMALE VOICE:  -- within 10 days.

24      MR. BODE  -- before, as long as it's within 10 days

25  they prefer.

13

1          THE COURT:  Okay, fine.

2          MR. BODE:  So, we've actually agreed, Your Honor,

3    subject to the Court's approval, the 25th at 10:00 a.m.;

4    January 25th.

5          THE COURT:  That's fine.

6          MR. BODE:  Yes, okay.

7       (Pause.)

8          THE COURT:  Is there any reason for him to travel

9    outside of New York City and Long Island?

10      (Pause.)

11         MS. ROSTAL:  No, Your Honor.

12         THE COURT:  Okay.

13         Given the assets he has, I'm going to set the bond

14   at $500,000.

15         And the confessions of judgement will be placed --

16   will be filed within a week?

17         MR. BODE:  The confessions of judgement, Your

18   Honor?

19         THE COURT:  Yes.

20      (Pause.)

21         THE COURT:  What cities are these properties in?

22   Knickerbocker Avenue?

23         THE DEFENDANT:  Yes.

24         THE COURT:  Where is that?

25         THE DEFENDANT:  In Brooklyn.

1          THE COURT:  In Brooklyn, and the -- Brooklyn, too?

2     And Cypress in Queens or Cypress --

3          THE COURT:  No, it's in Ridgewood, New York.

4          THE COURT:  Ridgewood.

5          MR. BODE:   And, Your Honor, Ms. Rostal indicated

6     that one of the properties defendant's wife is also on.

7          THE COURT:  Okay.

8          MS. ROSTAL:  At least one.

9          THE COURT:  Well, she's --

10          MR. BODE:  Or at least --

11          MS. ROSTAL:  But she's signing, so --

12          THE COURT:  She's going to --

13          MR. BODE:  Okay.

14          THE COURT:  -- sign anyway, so --

15       (Pause.)

16          THE COURT:  Does he own the house that he lives in?

17          MS. ROSTAL:  Yes.

18          THE COURT:  That's the Glendale?  You --

19          THE DEFENDANT:  Yes, Glendale.

20          THE COURT:  Okay.

21       (Pause.)

22          THE COURT:  All right.  Why don't you have the

23     sureties come up.

24       (Pause.)

25          THE CLERK:  Please raise your right hands.

15

1      (The witnesses are sworn.)

2            THE CLERK:  Please state your names.

3            THE DEFENDANT:  Pietro Polizzi.

4            MR. SALVATORE POLIZZI:  Salvatore Polizzi.

5            MS. POLIZZI:  Anna Polizzi.

6            THE COURT:  Agnus?

7            MS. POLIZZI:  Anna Polizzi.

8            THE COURT:  I'm sorry.

9            MALE VOICE:  Anna.  Anna.

10            THE COURT:  Anna, okay.  Anna.  Salvatore?

11            MR. SALVATORE POLIZZI:  Yes.

12            THE COURT:  Now, as you know, Pietro Polizzi was

13      arrested on very serious charges relating to the receipt and

14      possession of child pornography and he'll be released from

15      custody if you'll agree to sign a bond for $500,000 to

16      guarantee his appearance in court.

17            As you may have heard the assistant say that one of

18      the charges carries with it a mandatory minimum sentence of

19      five years.  So, there -- he does have a lot of incentive to

20      flee and not face the charges and certainly the other charges

21      could result.

22            MS. POLIZZI:  Five years in jail?

23            THE COURT:  A minimum.

24            He'll be released from custody if you agree to

25      cosign this bond for $500,000.  And I understand that you are

1    -- Mrs. Polizzi, you are co-owners of certain of the

2    properties to be posted as collateral, but liens are to be

3    placed on properties at 443 Knickerbocker Avenue in Brooklyn,

4    your home at 5706 Clover Place in Glendale, property on Grand

5    View Avenue in Brooklyn, as well as on Cypress Avenue in

6    Ridgewood.

7             Now, if you sign the bond and Mr. Polizzi

8    fails to appear, you will all owe the government $500,000.

9    Your obligations are joint and several.  That means the

10   government can collect from just one of you or from all of

11   you.  And it can choose to do so by utilizing any method it

12   wants.  It can choose to forfeit the properties, to collect

13   your bank accounts, to garnish your income and to keep doing

14   so until every cent is collected.

15            And as you probably know, most properties that are

16   forfeited rarely sell for close to the market value, so by

17   signing the bond, you are risking -- you're placing your

18   assets at risk, as well as risking any future income you may

19   have.

20            Do you understand?

21            MALE VOICE:  Yes.

22            THE COURT:  Do you have any questions about your

23   obligation?

24            MALE VOICE:  No.

25            MS. POLIZZI:  About what?

1    THE COURT:  Obligations under the bond?

2    MS. POLIZZI:  Why?

3    THE COURT:  Are you all willing to sign this bond?

4    THE DEFENDANT:  Yes.

5    MR. SALVATORE POLIZZI:  Yes.

6    THE COURT:  I guess, Mrs. Polizzi, you will sign a

7    confession of judgement to have liens posed on the properties

8    that you have an interest in?  Yes?

9    MS. POLIZZI:  (No audible response.)

10   THE COURT:  Mr. Polizzi, I'm going to go over the

11   conditions of release in just one minute.  I'm going to ask

12   the sureties now to cosign the bond.

13   (Pause.)

14   THE COURT:  You all reside at Clover Place, right?

15   THE DEFENDANT:  No.

16   MR. SALVATORE POLIZZI:  No.

17   MS. POLIZZI:  No.

18   THE COURT:  Who --

19   MR. SALVATORE POLIZZI:  I reside in Astoria.

20   THE COURT:  You are --

21   MR. SALVATORE POLIZZI:  Salvatore.

22   THE COURT:  Salvatore, okay.

23   MR. SALVATORE POLIZZI:  Yes.

24   THE COURT:  I'll give this bond to you.  It sets

25   forth the conditions of the bond.  Some of the terms are on

18

1    the back of half of the bond.

2           Mr. Salvatore Polizzi, sign by the X above your

3    printed name and then if you could put your address next to

4    it (indiscernible/background cough)--

5           MS. POLIZZI:  Can I just sign?

6           MALE VOICE:  Shh.

7           MS. POLIZZI:  No, I speak.  Can I just sign?

8           THE COURT:  Yes.  You will all sign --

9           MS. POLIZZI:  No, I don't want them to sign.  I

10   respond for my husband.

11          MALE VOICE:  (Indiscernible) --

12          MS. POLIZZI:  No, I -- no, I speak --

13          MALE VOICE:  Shh.

14          THE COURT:  Mrs. Polizzi --

15          MALE VOICE:  (Indiscernible) --

16          THE COURT:  Mrs. Polizzi --

17          FEMALE VOICE:  Wait.

18          THE COURT:  -- you will all sign the bond as --

19   that's the condition of release and I'm going to go over the

20   other conditions of release.  I'm going to ask Lakeesha

21   (phonetic) to give you the form bond so you can just read the

22   terms and -- which are on the bottom half of the first page

23   and then on top half of the back.  Okay.

24          Let me just go over the conditions of release, Mr.

25   Polizzi.  It's important you comply with them.  If you fail

1     to do so, the government could come back to court and seek to

2     have you detained.

3            Now the most important condition is that you come

4     back to court whenever required.  And your family is

5     cosigning a bond for $500,000.  If you don't appear, you're

6     going to cause them great financial hardship.  They're --

7     probably lose their homes and some other properties and may

8     be subject to the collection efforts of the government.

9            More importantly, if you don't appear, the Court

10    will issue a warrant for your arrest.  Failing to appear in

11    court is a serious matter and you could be prosecuted for

12    failing to appear.  If convicted, you would be subject to

13    criminal penalties, including imprisonment and a fine in

14    addition to whatever penalties could be imposed on the

15    charges that led to your arrest in the first place.

16           Your travel will be restricted to New York City and

17    Long Island.  You are not to have any contact with any

18    minors, except with your son and at work provided that

19    there's another adult present at all times when there are

20    minors present.

21           THE DEFENDANT:  May I ask a question?

22           THE COURT:  Yes.

23           THE DEFENDANT:  My other place I have nine

24    employees working for me.  So --

25           THE COURT:  Well, that's fine.  That's fine, but I

20

1    -- if it just turns out that you're the only person in a room

2    serving you're going to make sure someone else is with you.

3         You're to surrender your passport by Monday.  You

4    are subject to random visits at your home and place of work

5    at pretrial.

6         And until you surrender the passport, random phone

7    calls to -- you're to report as directed by pretrial

8    services.  You will have to undergo evaluation and treatment

9    for your mental health condition and you are not to have any

10   access to the Internet.  And you must surrender all firearms

11   you posses to the local police.

12        The last condition is that you not commit any other

13   crime while on release.  And I'm advising that if you tamper

14   with evidence, intimidate witnesses or otherwise obstruct an

15   investigation, those are federal crimes and you could be

16   subject to greater penalties than could ordinarily be imposed

17   if you commit those crimes while on release.

18        Do you understand?

19        THE DEFENDANT:  (No audible response.)

20        THE COURT:  And Mr. and Mrs. Polizzi, you're going

21   to have to cooperate with your attorney and ensure that

22   appropriate documents are filed so that liens can be placed

23   on the four properties that you own.  You understand?

24        MR. SALVATORE POLIZZI:  (No audible response.)

25        MS. POLIZZI:  (No audible response.)

1          (Pause.)

2                THE COURT:  Do you understand the bond that you've

3     signed?

4                MR. SALVATORE POLIZZI:  Yes

5                MS. POLIZZI:  Yes.

6                THE COURT:  Okay.

7                So, as you've heard, Mr. Polizzi, the next

8     conference before Judge Weinstein will be on January 25th at

9     10:00.

10               THE DEFENDANT:  Okay.

11               THE COURT:  All right.

12               MS. POLIZZI:  Thank you.

13               MALE VOICE:  Thank you.

14               FEMALE VOICE:  Your Honor, may I take the --

15          (Recess 6:18 p.m. to 6:19 p.m.)

16               MS. POLIZZI:  What?

17               MALE VOICE:  Sure.  Just for -- to humor you.

18               MS. POLIZZI:  I don't understand.  You want to

19     explain to me --

20               THE COURT:  No, I don't.

21               MALE VOICE:  No, no. no.

22               THE COURT:  We're not going to -- I'm -- I don't --

23               MALE VOICE:  Judge --

24               MS. POLIZZI:  No, are you --

25               THE COURT:  I don't think it's necessary to -- you

1    know, if you want an exclusion of time, it makes sense to

2    make an application for an exclusion of a longer period of

3    time.  I don't --

4              MR. BODE:  Well, given that we haven't had a chance

5    to -- you know, Ms. Rostal's not going to be the attorney.

6    We haven't had a chance to -- can't really start plea

7    negotiations until we know who the attorney's going to be.

8              THE COURT:  Actually, I haven't -- is legal aid of

9    the opinion that he doesn't have sufficient income?

10             FEMALE VOICE:  I haven't even --

11             THE COURT:  I mean he does have the assets.

12             FEMALE VOICE:  I haven't seen the financial

13   affidavit, so I don't know.  I don't take any position on

14   that.  Does Your Honor --

15             THE COURT:  It's always a difficult situation where

16   there are more assets than income.  I think it may be

17   appropriate to revisit this issue should we liquidate any of

18   his assets, but the income is not --

19             MR. BODE:  We can do that.  I was just looking in

20   terms of the -- I think it indicates $6,000 a month --

21             THE COURT:  Six thousand?  I thought it was 3,000?

22             MR. BODE:  Well, it was 3,000 from the pizzeria and

23   I think 3,000 from rental properties.  On the cover, it

24   indicates --

25             THE COURT:  Okay.

1       MR. BODE:  -- monthly income, 6,000.

2       THE COURT:  Okay.

3       MS. ROSTAL:   But there's also --

4       MR. BODE:  So --

5       MS. ROSTAL:  -- liabilities of --

6       MR. BODE:  Liabilities --

7       MS. ROSTAL:  -- 5,000 a month.

8       MR. BODE:  -- too, but I just wanted to raise that

9  issue given that that was -- seemed to be a --

10      THE COURT:  I --

11      MR. BODE:  And a $40,000 in a checking account.  I

12  would tend to think --

13      THE COURT:  It probably does make sense to revisit

14  this issue and see if retained counsel can be obtained, but I

15  -- I'll permit Miss -- it's a borderline -- his wife doesn't

16  work?

17      MR. BODE:  I believe that's correct.

18      THE COURT:  Yes.  So it's certainly more

19  financially solvent than most legal aid clients by --

20      MS. ROSTAL:  So, we'll --

21      THE COURT:  I --

22      MS. ROSTAL:  We're assigned in --

23      THE COURT:  Well, I think that under the

24  circumstances maybe it does make sense to exclude time.

25      I'm going to ask you to go look for counsel, Mr.

1  Polizzi.

2          THE DEFENDANT:  Excuse me?

3          THE COURT:  You are to go and look for your own

4  attorney, but Miss Rostal will represent you until such time

5  as you're finding counsel.  So I will exclude the time.  It

6  is advisable that you find new counsel by the next conference

7  on the 25th.

8          Maybe it makes sense to just delay it a --

9          MR. BODE:  And if he doesn't have counsel by then,

10  we could -- the judge -- Judge Weinstein's clerk indicated 10

11  days so we could put the status date the next week to give

12  him more time get counsel.

13          THE COURT:  Why don't we put it over to the

14  following week and then we can -- and I will exclude time.

15      (Pause/counsel confer.)

16          MR. BODE:  The 31st at 10:00 a.m., Your Honor.  And

17  I'll call Judge Weinstein's clerk on Monday.

18          THE COURT:  So I'll exclude the time from today

19  until the 31st of -- from the time period within which trial

20  must commence because it's to enable the defendant to obtain

21  his own attorney in this matter.

22          MR. BODE:  Thank you, Your Honor.

23          MS. ROSTAL:  Thank you, Your Honor.

24      (Proceedings concluded 6:23 p.m.)

25      I, CHRISTINE FIORE, court-approved transcriber, certify

25

that the foregoing is a correct transcript from the official
electronic sound recording of the proceedings in the above-
entitled matter.

_____          May 15, 2006

    Christine Fiore