FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ APR 0 3 2008 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA, )
)
v. )
)
PETER POLIZZI, )
)
        Defendant. )
)

No. 06-CR-22 (JBW)

MEMORANDUM
&
LEGAL INSANITY CHARGE

---

JACK B. WEINSTEIN, Senior District Judge:

APPEARANCES:

For the Government:

    Benton J. Campbell, U.S. Attorney for the Eastern District of New York
        By:    Allen Lee Bode

For Defendant Peter Polizzi:

    Mitchell J. Dinnerstein, Esq.

## TABLE OF CONTENTS

I.    Introduction .................................................................... 2
    A    Defendant ................................................................ 2
    B.    Jury Charge on Legal Insanity ........................................ 3
    C.    Trial ..................................................................... 4
    D.    Jury Verdict ............................................................ 5
    E.    Post-Verdict Proceedings .............................................. 6

II.    Legal Insanity Defense ......................................................... 6
    A.    Federal Insanity Defense Reform Act ................................ 6
    B.    Government's Proposed Insanity Charge ........................... 8
    C.    Defendant's Proposed Insanity Charge ............................. 9
    D.    Insanity Charge Given by the Court ................................ 10
        1.    Definition of "Wrongfulness" ............................... 11
        2.    Rationale ..................................................... 14

1



|   |    |                                                                           |     |
|---|----|---------------------------------------------------------------------------|-----|
|   | a. | A "Public Morality" Charge Would Be Prejudicial and Unnecessarily Vague   | 15  |
|   | b. | *Ewing* Is Distinguishable                                                | 17  |
|   | c. | Polizzi Did Not Directly Introduce Moral Justification                    | 18  |
| III. | Conclusion |                                                                 | 19  |

## I. **Introduction**

Defendant, Peter Polizzi, was charged with - - and convicted after a jury trial of - - twelve counts of receipt and eleven counts of possession of images of child pornography under 18 U.S.C. §§ 2252(a)(2) and 2252(a)(4)(B), *see* Superseding Indictment, Mar. 8, 2007, Docket Entry No. 35, after a search of his home's detached garage resulted in the discovery of over 5,000 digital images stored on his computers and hard drives. At trial, Polizzi pleaded the affirmative defense of not guilty by reason of insanity under the federal Insanity Defense Reform Act of 1984 ("IDRA"), 18 U.S.C. § 17). The jury rejected the defense. Familiarity with the facts is assumed. See memorandum and order on motions to dismiss and for a new trial and on sentencing, *United States v. Polizzi*, No. 06-22, __ F. Supp. 2d __ (E.D.N.Y. Apr. 1, 2008).

The insanity defense was largely predicated on Polizzi's having himself been severely sexually abused as a child and the psychological aftereffects. The parties had considerable difficulty in suggesting the form of the jury charge under the unique circumstances of the case. *See* 18 U.S.C. § 17.

### A   Defendant

Defendant's background was positive. *See* Part II.A of *Polizzi*, __ F. Supp. 2d __. He was brought to this country when he was a young teenager after a childhood in Sicilian poverty;

2

had little formal education, yet, after teaching himself to play an instrument, led a popular local band; worked extremely long hours at menial labor as a boy, and then bought and built-up a successful restaurant; had a loving wife and five supportive lawfully engaged sons; lived in a fine home; was well respected in the community by the police, clergy and others; had no criminal record; viewed the charged pornography downloaded from the Internet alone in a double-locked room above his garage; and, upon his arrest, cooperated fully with the police, suggesting to them that whoever participated in producing these dreadful pornographic images should be prosecuted. His testimony as to the severe sexual abuse he had suffered while a child in Sicily was credible and moving.

### B. Jury Charge on Legal Insanity

At trial the only contested issue was Polizzi's affirmative defense of legal insanity. *See* 18 U.S.C. § 17. Polizzi admitted collecting child pornography and described at length how and why he began to do so. His testimony - - accepted as truthful by the jury - - was that severe childhood sexual abuse had caused him, as an adult, to develop what experts referred to as an obsessive-compulsive disorder ("OCD") and hoarding behavior as well as a post-traumatic stress disorder ("PTSD"). As a result of the trauma he re-experienced upon accidentally stumbling across child pornography on the Internet and seeing other children being sexually abused, he claimed he began to collect child pornography to turn over to law enforcement in a misguided attempt to "help the children." Until his arrest, however, Polizzi never told anyone about his collection.

The definition of legal insanity was critical. The parties' proposed jury instructions, and in particular their definitions of "wrongfulness," were sharply contrasting. The government

requested that the court, based on a recent Seventh Circuit Court of Appeals decision, *United States v. Ewing*, 494 F.3d 607, 618 (7th Cir. 2007), issue a jury charge defining "wrongfulness" under the IDRA to be "*contrary to public morality*, as well as contrary to law." Govt.'s Req. to Charge 29, Aug. 20, 2007, Docket Entry No. 59 (emphasis added); *see* Govt.'s Letter Objecting to Def.'s Req. to Charge 1-2, Sept. 5, 2007, Docket Entry No. 67; Govt.'s Mem. of Law in Support of Proposed Jury Req. No. 18: Aff. Defense – Insanity 8-11, Sept. 12, 2007, Docket Entry No. 75. Defendant opposed, arguing for a standard jury instruction based on 1 Leonard Sand, et al., Modern Federal Jury Instructions – Criminal § 8.09 (2007), which does not specifically define "wrongfulness." Def.'s Req. to Charge 9-10, Sept. 5, 2007, Docket Entry No. 66; Def.'s Letter Br. on Aff. Defense of Insanity 1-2, Sept. 14, 2007, Docket Entry No. 76. The court denied both requests and issued its own instruction, defining "wrongfulness" as "unlawfulness." *See* Part II, *infra*, for reasons. No objection was taken to the court's formulation.

### C. Trial

At trial, defendant's receipt and possession of the pornographic images and the fact that the images depicted minors engaging in sexually explicit conduct were not disputed.

To satisfy the IDRA, Polizzi had the burden of proving by "clear and convincing" evidence that he was legally insane when the offenses occurred in that he: 1) had a "severe mental disease or defect" at the time he downloaded the images over a period of some five years; and 2) as a result he had been "unable to appreciate the nature and quality or the wrongfulness of his acts." 18 U.S.C. § 17. The statute reads in pertinent part as follows:

> It is an affirmative defense to a prosecution under any Federal Statute that, at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts. Mental disease or defect does not otherwise constitute a defense.

*Id.*

Focusing on Polizzi's childhood sexual abuse, the defense emphasized its lasting psychological effects as manifested in his post-traumatic stress and obsessive-compulsive disorders. *See* Dr. Goldsmith's Addendum: Psych. Rep. 1, Jan. 2, 2007 ("[W]hen viewing child pornography on the Internet [Polizzi] had a retraumatizing experience. In a regressed and obsessive state he downloaded and searched child pornographic images for evidence of victimization, something he had experienced as a child."). According to defense counsel,

> Mr. Polizzi was doing what he believed to be right. He could not appreciate that downloading pictures of the children was wrong. What is wrong, what Mr. Polizzi knows is wrong . . . is child abuse. . . . Mr. Polizzi, in a wrong way maybe, but in his way because of his psychological trauma, is trying to figure out a way to stop child abuse.

Trial Tr. 1368; *see id.* at 782. Polizzi attempted to prove legal insanity through his own and expert testimony. The government rebutted defense contentions with its own expert who found no mental disease or defect. *See* Part II.B.6 of *Polizzi*, __ F. Supp. 2d __.

### D. Jury Verdict

The jury found Polizzi guilty on all counts. During jury deliberations, it was evident from its questions that it rather quickly decided the issue of guilt. Determining whether Polizzi had carried his burden of proving legal insanity took the jury several days during which jurors reviewed the exhibits concerning Polizzi's mental condition. Trial Tr. 1439.

5

The jury ultimately rejected Polizzi's defense of legal insanity. It was justified in doing so. Despite defendant's mental problems, a jury could find that he was able to appreciate the nature and quality and the wrongfulness of his acts (i.e., the downloading and possessing images of child pornography). *See* 18 U.S.C. § 17. At the time he obtained and viewed the images, Polizzi testified, he believed he was not violating the law or morality. *Once he was told his actions were illegal, he understood they were wrong. See* Trial Tr. 1047, 1105 ("Now I know it's wrong, but back then I didn't - - I didn't know it was wrong"); *id.* at 667 ("When we [the police] explained the circumstances to him of what possessing child pornography was, what it actually meant, he was remorseful. He understood that it isn't just possessing pictures, we spoke to him about that. It wasn't just having these images and looking at them that, it was damaging children and he became remorseful.").

### E. Post-Verdict Proceedings

After the jury was discharged, some members of the jury supported a sentence providing for mental health treatment rather than imprisonment. *See id.* at 1454-59. They wanted treatment and close supervision to prevent a recurrence, not the mandatory minimum term of no less than five years' incarceration.

## II. **Legal Insanity Defense**

### A. Federal Insanity Defense Reform Act

As noted above, the insanity defense incorporated by Congress in the IDRA provides that it is "an affirmative defense" that "the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts." 18 U.S.C. §

6

17(a). The defendant has the burden of proof "by clear and convincing evidence." 18 U.S.C. § 17(b).

The IDRA does not define "wrongfulness." *M'Naghten's Case*, 8 Eng. Rep. 718 (1843), upon which the IDRA is based, specifically "used the term 'wrong' instead of 'illegal' to prevent confound[ing] the jury, by inducing them to believe that an actual knowledge of the law of the land was essential in order to lead to a conviction." *Ewing*, 494 F.3d at 619 (quoting *M'Naghten*, 8 Eng. Rep. at 723). Since the enactment of the IDRA, only three published opinions have directly addressed the definition of wrongfulness under the IDRA. *See id.*; *United States v. Dubray*, 854 F.2d 1099 (8th Cir. 1988); *United States v. Danser*, 110 F. Supp. 2d 807 (S.D. Ind. 1999).

The *Ewing* court provided a matrix of alternative possible interpretations:

> In the context of the insanity defense, courts and scholars have generally proposed three alternative definitions for the term: (1) legal wrongfulness, as in "contrary to law"; (2) moral wrongfulness, as in "contrary to public morality," determined objectively by reference to society's condemnation of the act as morally wrong; or (3) moral wrongfulness, as in "contrary to *personal* morality," determined subjectively by reference to the defendant's belief that his action was morally justified (even if he appreciated that it was illegal or contrary to public morality).

*Ewing*, 494 F.3d at 616.

Following this schema, the government's proposed jury charge in the instant case requested both definitions (1) and (2); defendant's proposed pattern jury charge left open the specific definition of wrongfulness; and the court's actual jury charge endorsed the first definition only, legal wrongfulness. *See* Ct.'s Jury Charge 18 ("'Wrongfulness' means in this case 'unlawfulness.'"). Somewhat ambiguous, the proposed government charge could have been construed as requiring proof of both forms of wrongfulness.

B.  Government's Proposed Insanity Charge

The government's complete proposed jury instruction on the affirmative defense of insanity under the IDRA was as follows:

AFFIRMATIVE DEFENSE - INSANITY

The defendant claims to have been insane at the time that the crimes charged in the indictment were allegedly committed. Since the law does not hold a person criminally accountable for his or her conduct while insane, insanity is a defense to the crime charged. The sanity of the defendant at the time of the alleged offenses is, therefore, a question which you must decide.

To be found to be insane, the defendant must prove by clear and convincing evidence that:

First: He had a severe mental disease or defect at the time that the acts constituting the crime charged were committed, and
Second: As a result of this severe mental disease or defect, he was not able to appreciate the nature and quality or wrongfulness of his acts. In other words, he was unable to understand what he was doing or to understand what he was doing was wrong.

*The term "wrongfulness" as used in these instructions means contrary to public morality, as well as contrary to law.*

*However, evidence that the defendant knew his conduct was contrary to law may be considered by you in determining whether the defendant appreciated that his conduct was contrary to public morality.*

The defendant must prove his insanity at the time of the offense by clear and convincing evidence, that is, the defendant must show that it is highly probable that he was insane at that time.

In making your decision, you may consider evidence of the mental condition of the defendant before or after the crime charged and you may consider not only the statements and opinions of any experts who have testified, but also all of the other evidence received in the case.

If you find that the defendant committed the acts described in the essential elements of the crimes charged, but that the defendant was legally insane at the

time that the acts were committed, you must find the defendant "not guilty only by reason of insanity."

Applying all of the other instructions given to you, you may also find the defendant "guilty" or "not guilty."

Even though the defendant has raised the issue of insanity, the government still has the burden of proving all of the essential elements of the offenses charged beyond a reasonable doubt. [Adapted from 1A Kevin F. O'Malley, et al., Federal Jury Practice and Instructions § 19.03 (5th ed. 2007); 18 U.S.C. § 17; *Ewing*, 494 F.3d 607.]

Govt.'s Req. to Charge 30 (emphasis added). In *Ewing*, the Court of Appeals for the Seventh Circuit upheld a virtually identical instruction. 494 F.3d at 613 (approving of a "contrary to public morality, as well as contrary to law" charge).

### C. Defendant's Proposed Insanity Charge

The defense's proposed insanity charge, based on 1 Sand, *supra*, § 8.09, did not include any definition of "wrongfulness" but applied the IDRA's test:

### AFFIRMATIVE DEFENSE - SEVERE MENTAL DISEASE OR DEFECT

You have heard evidence tending to show that the defendant was insane at the time that the crime was committed. Specifically, I am referring to the testimony of Dr. Eric Goldsmith. The Government has offered evidence in rebuttal tending to show that the defendant was sane. Specifically, I am referring to the testimony of Dr. N.G. Berrill. The burden of proof is on the defendant to prove by clear and convincing evidence that he was insane at the time of the acts.

*The acts in this case, is as described by the Government, that the defendant downloaded onto his computer the material described in the indictment. The Government says that the unlawful conduct is the receipt and possession of the downloaded material.*

*The defense on the other hand says that the defendant due to a severe mental disease or defect at the time of the commission of the acts constituting the offense was unable to appreciate the nature and quality or the wrongfulness of his acts, that is the downloading of the material.*

9

> *Under the law, a defendant is not guilty if he was insane when the crime was committed. The law defines insanity to mean that a person is not criminally responsible for criminal conduct if, at the time of such conduct, as a result of a severe mental disease or defect, he was unable to appreciate the nature and the quality or wrongfulness of his acts.*
>
> When I speak about a mental defect, I do not refer to any particular medical term, even though the opposing doctors did make reference to medical terms.
>
> It is for you to determine whether the defendant is suffering from a mental disease or defect not the doctors.
>
> If you unanimously agree that the defendant has proven the affirmative defense of insanity by clear and convincing evidence, then you must find the defendant not guilty by reason of mental disease or defect. If you unanimously agree that the government has proven each element of the offense beyond a reasonable doubt and you unanimously agree that the defendant has not proven this defense of insanity by clear and convincing evidence then you must find the defendant guilty. If you cannot agree unanimously on whether the defendant has established the affirmative defense of insanity, then you cannot return any verdict. [*See* 1 Sand, *supra*, § 8.09.]

Def.'s Req. to Charge 9-10 (emphasis added).

By emphasizing that the acts involved - - the acts which defendant claimed "as a result of a severe mental disease or defect, he was unable to appreciate the[ir] nature and the quality or wrongfulness" - - were the *passive downloading* onto his computer of the images involved, Polizzi reminded the jury that his offense was not a typical violent act. *See* Def.'s Letter Br. on Aff. Defense of Insanity 2.

### D. Insanity Charge Given by the Court

There was no need in the present case to explore with the jury the difference between moral and legal wrongfulness. *See Dubray*, 854 F.2d at 1101 ("The jury should be instructed on the distinction between moral and legal wrongfulness . . . only where the evidence at trial

10

suggests that this is a meaningful distinction in the circumstances of the case."). The child pornography pictures - - both still and moving - - were so hideously inappropriate that they were recognized by all participants in the trial, including defendant and the jury, as morally wrong and appropriately characterized as legally wrong. In context, "wrongfulness" and "unlawfulness" were congruent insofar as the receipt and possession of child pornography was criminal.

The term "appreciate" rather than "know" was used and defined. This approach is based on the IDRA itself as well as the well-conceived American Law Institute's Model Penal Code. *See* Model Penal Code § 4.01 (1985) ("lacks substantial capacity . . . to appreciate the criminality [wrongfulness] of his conduct") (original brackets).

"Substantial" rather than "total" lack of capacity was charged. Although "substantial" is in the Model Code, *see id.*, it is not a term used in the statute. But absolutes are almost impossible to prove when dealing with the subtle and complex operations of the human mind. The word "substantial" gives play to the heavy - - but far less than one hundred percent probability - - burden placed upon defendant. *See In re Winship*, 397 U.S. 358, 367-68 (1970) (probabilities of truth in various burdens of proof); *NAACP v. AcuSport, Inc.*, 271 F. Supp. 2d 435, 478-80 (E.D.N.Y. 2005) (collecting cases and discussing the hierarchy of proof among the beyond a reasonable doubt, clear and convincing, and preponderance of evidence standards); *United States v. Copeland*, 369 F. Supp. 2d 275, 333-34 (E.D.N.Y. 2005) (recounting testimony describing differing burdens of proof).

*1.     Definition of "Wrongfulness"*

The court's complete jury charge on the insanity defense was as follows:

<u>AFFIRMATIVE DEFENSE - LEGAL INSANITY</u>

The defendant claims to have been legally insane at the time that the crimes charged in the indictment were allegedly committed. Because the law does not hold a person criminally responsible for his conduct while he is legally insane, legal insanity is a defense to the crime charged. You must decide whether the defendant was legally insane at the time of the alleged offense. [*See* 1A O'Malley, *supra*, § 19.03.]

That law that provides for the insanity defense is Section 17 of Title 18 of the United States Code. The statute reads as follows:

§ 17. Insanity defense

(a) Affirmative defense. It is an affirmative defense to a prosecution under any Federal statute that, at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts. Mental disease or defect does not otherwise constitute a defense.

(b) Burden of proof. The defendant has the burden of proving the defense of insanity by clear and convincing evidence.

1) When the statute says "at the time" of the commission of the acts constituting the offense, it means at or about the times charged in the indictment.

2) When the statute says "severe mental disease or defect," it means that the defendant's mental disease or defect must be quite serious.

The "disease" need not be one defined by medical terminology. It may be a medically defined disease or one you as laypersons would call a disease.

The "defect" need not be one defined by medical terminology. It may be a medically defined defect or one you as laypersons would call a defect.

Either "disease" <u>or</u> "defect" is enough to constitute a defense.

3) The statute says, "was unable to appreciate the nature and quality <u>or</u> the wrongfulness of his acts." Either inability to appreciate the nature and quality of his acts <u>or</u> the wrongfulness of his acts is enough to establish the defense.

*"Wrongfulness" means in this context "unlawfulness." The definition becomes somewhat subtle because a defendant does not have to know an act is illegal to be guilty of doing the act which constitutes the crime as defined by law.*

The specific intents charged here are essentially to download and to possess. *Thus, when the statute says "unable to appreciate" the "wrongfulness" of his acts, you are, in effect, being asked to determine, "If he were told that the act was illegal, would he be able to understand, i.e., "appreciate," that he would be breaking the law by downloading or by possessing? Ask yourselves, for example, could he understand and appreciate that what he was doing was unlawful?*

When the statute says "unable to appreciate the nature and quality of his acts," you are, in effect, being asked to determine whether he was able to understand, i.e., "appreciate," that he was downloading or possessing the charged images. Ask yourselves, for example, could he understand and appreciate that he was doing the act of downloading or possessing?

4) The statute uses the word "appreciate" rather than "know." That conveys a broader requirement of a sense of understanding than mere cognition. [*See* Am. Law Inst., Model Penal Code § 4.01 (1985).] Ask yourselves, for example, was he not only intellectually able to understand, but was he emotionally able to realize the nature and quality or wrongfulness of his acts? For example, a child may say something by rote, but not understand what the words implicate and mean; in such an instance, the child does not appreciate what is being said.

5) To be held not responsible because of legal insanity, the defendant must, as a result of a mental disease or defect, either lack *substantial capacity to appreciate* the wrongfulness of his conduct or lack substantial capacity to appreciate the nature and quality of his acts. *The standard requires not a total lack of capacity, but a substantial lack of capacity.* [*See id.*]

An individual's failure to appreciate the criminality of his conduct may consist in a lack of awareness of what he is doing or a failure to apprehend the significance of his actions in some deeper sense. [This is substantially the American Law Institute's Model Penal Code definition in § 4.01, with the elimination of the language, "to conform his conduct to the requirements of law," which is not in the federal statute.]

The defendant has the burden of proving insanity by "clear and convincing evidence." That is a high degree of proof. It is higher than "more probable than not," but not as high as "beyond a reasonable doubt."

Experts for either side are not permitted to give an opinion about or infer whether the defendant was or was not able to appreciate the nature or wrongfulness of his conduct. They may give an opinion as to whether the defendant did or did not have the defect or disease relied upon as a defense. That ultimate issue is for you alone.

13

> To summarize the insanity defense:
>
> You have heard evidence tending to show that the defendant was legally insane at the time that the crime was committed. The government has offered evidence tending to show that he was not legally insane. The burden of proof is on the defendant to prove by clear and convincing evidence that he was legally insane at the time of the offense.
>
> Under the law, a defendant is not guilty if he was legally insane when the crime was committed. The law defines insanity to mean that a person is not responsible for criminal conduct if at the time of such conduct, as a result of a severe mental disease or defect, he was unable to appreciate the nature and quality or wrongfulness of his acts. When the law speaks about a mental disease or defect, it does not refer to any particular medical term.
>
> There are three possible verdicts in this case: not guilty, not guilty only by reason of insanity, or guilty.
>
> Even though the defendant has raised the defense of insanity, the government still has the burden of proving all the elements of the offense beyond a reasonable doubt. [This recapitulation is essentially from 1 Sand, *supra*, § 8.09 (Instruction 8-10).]

Ct.'s Jury Charge 17-20 (emphasis added). When defining "knowingly" in another section of the charge, the court repeated that "[i]gnorance of the law is no excuse." *Id.* at 9.

### 2. Rationale

The problems of the relation of insanity to criminal culpability have long been daunting. *See, e.g., United States v. Brawner*, 471 F.2d 969, 1033 (D.C. Cir. 1972) (adopting the Model Penal Code's test of "lack[ing] substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law"); *Durham v. United States*, 214 F.2d 862 (D.C. Cir. 1954) (defining legal insanity as where the defendant's conduct was "the product of a mental disease or defect"); *M'Naghten*, 8 Eng. Rep. 718; Model Penal Code § 4.01 (combining the *M'Naghten* test and "irresistible impulse" test). Professor Herbert Wechsler, who

led the drafting of the American Law Institute's definition, as well as the legislatures and courts that modified the ALI's language were more troubled with this subject than any other in the Penal Code. *See* Modern Penal Code § 4.01 cmt. and app. A-C; note Dr. M. S. Guttmacher's objection in Appendices A and B.

   *a.* *A "Public Morality" Charge Would Be Prejudicial and Unnecessarily Vague*

There is merit in the government's contention that appreciation of both law and community views of morality must be considered in applying the statute. But a difficulty with the government's suggested use of a "contrary to public morality" charge is that community views of what should be punishable as pornography vary greatly. *See* Part III.F of *Polizzi*, ___ F. Supp. 2d ___. To explicitly introduce the issue of morality in a case such as this one, particularly were the jury's knowledge of the harsh probable sentence blocked, *see id.* at Part II.B.5.b, would be likely to confuse many jurors.

> "[T]here is no provable 'national standard' [of obscenity]" . . . . It is neither realistic nor constitutionally sound to read the First Amendment as requiring that the people of Maine or Mississippi accept public depiction of conduct found tolerable in Las Vegas, or New York City. People in different States vary in their tastes and attitudes, and this diversity is not to be strangled by the absolutism of imposed uniformity.

*Miller v. California*, 413 U.S. 15, 32-33 (1973) (quoting *Jacobellis v. Ohio*, 378 U.S. 184, 200 (1964) (Warren, C.J., dissenting) (footnote and citations omitted)); *see also Jacobellis*, 378 U.S. at 197 (Stewart, J., concurring) ("[F]aced with the task of trying to define what may be indefinable. . . . I shall not today attempt further to define the kinds of material I understand to

be embraced within that shorthand description . . . . But I know it when I see it") (footnotes omitted).

Injecting a "public morality" element into the instruction unnecessarily complicates the jury's job, possibly leading to more intrajury conflicts and mistrials. As Justice Douglas warned in *Roth v. United States*,

> Any test that turns on what is offensive to the community's standards is too loose, too capricious, too destructive of freedom of expression to be squared with the First Amendment. Under that test, juries can censor, suppress, and punish what they don't like, provided the matter relates to "sexual impurity" or has a tendency "to excite lustful thoughts." This is community censorship in one of its worst forms.

354 U.S. 476, 512 (1957) (Douglas, J., dissenting). *But see Miller*, 413 U.S. at 24 (defining obscenity based on, in part, "whether the average person, applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest") (quotations omitted). Just as there is no one-size-fits-all public morality given our country's extraordinary heterogeneity, the imposition into the insanity defense of local interpretations of public morality via a jury composed of a cross-section of the local community compounds the difficulties of reaching a consensus verdict.

Here the statutory definition is fairly precise, so that the court need not be concerned with varying views of what is immoral pornography. *See* 18 U.S.C. § 2252(a)(2) (prohibiting knowing receipt of "any visual depiction . . . if (A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and (B) such visual depiction is of such conduct"); 18 U.S.C. § 2252(a)(4)(B) (prohibiting knowing possession of same). There was no doubt that the charged images briefly shown at trial fell within the statutory law.

Thus, a definition sticking closely to that in the statute defining the illegal acts, rather than adding the issue of general morality, was appropriate. The need for precision is particularly important in a case such as the present once, where the emotional animus of the community against the acts charged is great.

### b. *Ewing* Is Distinguishable

*Ewing*, the case upon which the government primarily relies, is distinguishable. In contrast to Polizzi's case, *Ewing's* unusual facts did support a "contrary to public morality charge." There, the defense attempted to *directly* introduce the defense of moral justification by first proposing a non-pattern jury instruction focusing on the defendant's personal, subjective, morality. *Ewing,* 494 F.3d at 611-12. In response, the government suggested a charge defining wrongfulness as "contrary to public morality." The court "rejected the defendant's proposed instruction, concluding that it was an incorrect statement of law because it defined wrongfulness according to the defendant's personal standards of morality," but reserved judgment on the need for a wrongfulness instruction. *Id.* at 612.

At trial, evidence was introduced that Ewing, as a result of his paranoid schizophrenia conceded by the government, had attacked his victim, a judge, because he believed the judge to be part of a conspiracy to read his thoughts and steal his imagined twenty-five million dollar personal injury judgment. Only after the defendant's doctor testified that defendant had believed that his attack was morally justified did the court adopt the government's proposed charge. *Id.* at 612-13. The jury found Ewing guilty.

The Court of Appeals for the Seventh Circuit upheld the "contrary to public morality" instruction because the instruction "asked not whether *the defendant* believed he was justified

based on his delusional view of reality, but whether *society* would judge his actions an appropriate response to his delusions." *Id.* at 619-20. Ewing's belief in the judge's participation in the mind-reading conspiracy against him - - *even if true* - - did not justify his knowingly throwing a Molotov cocktail into the courtroom. *See id.* at 619-20 (citing *M'Naghten*, 8 Eng. Rep. 718).

### c. *Polizzi Did Not Directly Introduce Moral Justification*

Unlike the defendant in *Ewing*, Polizzi did not request a non-pattern jury instruction defining insanity in terms of his own subjective personal morality. Neither did he contend that he was morally justified in collecting child pornography, although that inference was arguably raised by his assertion that he had intended to turn his collection over to law enforcement to help the victimized children. The crux of his insanity claim lay in his assertion that seeing the images had retraumatized and reminded him of his own abuse; his PTSD, obsessive compulsiveness, and hoarding impulse caused him to begin collecting the images as a way of "saving" the children by taking the images "off" the Internet; and that he was searching for images of his uncle, his primary abuser, or of himself as a child. A "contrary to public morality charge" was irrelevant.

Regarding the government's objection that Polizzi would argue that he did not know child pornography was illegal in order to show he did not appreciate the legal wrongfulness of his actions, the court's instructions were sufficient. Although the jury was informed that "'[w]rongfulness' means in this context 'unlawfulness,'" it was told that "a defendant does not have to know an act is illegal to be guilty of doing the act which constitutes the crime as defined by law;" rather, the question was, "'[i]f he were told that the act was illegal, would he be able to understand, i.e., 'appreciate,' that he would be breaking the law by downloading or by

possessing?'" Ct.'s Jury Charge 18. Emphasized was the rule that "[i]gnorance of the law is no excuse." *Id.* at 9.

Although Polizzi did testify that he did not know that child pornography was illegal, he told the jury he had been shocked to learn that such images existed on the Internet, believed they were wrong, and wished they were illegal. Trial Tr. 1047, 1105; *see id.* at 667. The jury could appropriately have concluded that Polizzi did appreciate the inherent wrongfulness of child pornography, and, once informed of the law, could appreciate that downloading it was illegal. It cannot be said that the defense was proved.

## III. Conclusion

The proposed jury charges of the parties were properly rejected in favor of the charge given. There is no ground for a new trial on this ground. *See* Parts V-VI of *Polizzi*, __ F. Supp. 2d __.

SO ORDERED.

_____
Jack B. Weinstein
Senior Judge, Eastern District of New York

Dated: April 1, 2008
       Brooklyn, New York

19