FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ APR 3 0 2009 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,               )        No. 06-CR-22 (JBW)
                                         )
v.                                       )        MEMORANDUM ON
                                         )        POST-APPELLATE
                                         )        PROCEEDINGS
PETER POLIZZI,                           )
                                         )
                    Defendant.           )
_____)

**JACK B. WEINSTEIN, Senior District Judge:**

## I. Introduction

The defendant was convicted of multiple counts for receipt and possession of child pornography. *See United States v. Polizzi*, 549 F. Supp. 2d 308, 319 (E.D.N.Y. 2008). A new trial was granted by the trial court. *Id.* at 446. The Court of Appeals for the Second Circuit reversed, directing "further proceedings consistent with this opinion." *United States v. Polouizzi*, Nos. 08-1830, 08-1887, slip op. at 34 (2d Cir. Apr. 24, 2009).

No mandate has yet been received, so the appeal is still pending. A trial court has no authority to take action affecting the case while appellate proceedings are ongoing. *See* Fed. R. App. P. 41; *United States v. Rodgers*, 101 F.3d 247, 251 (2d Cir. 1996) ("A district court does not regain jurisdiction until the issuance of the mandate by the clerk of the court of appeals."). Nevertheless, the trial court has a continuing obligation to bring to the attention of the parties factors that may affect their decisions prior to, or on, remand.

A court of appeals may affirm the district court on any theory supported by the record, regardless of whether it was the theory relied upon by the district court. *See, e.g., Lee v. Kemna*, 534 U.S. 362, 391 (2002) ("it is well settled that an appellate tribunal may affirm a trial court's

1

judgment on any ground supported by the record"); *Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 560 F.3d 118, 126 (2d Cir. 2009) (noting "the principle that an appellate court may affirm a judgment on any ground supported by the record"); *Barbara v. New York Stock Exch., Inc.*, 99 F.3d 49, 57-58 (2d. Cir. 1996) ("We retain on appeal . . . the authority to affirm the district court's dismissal on any ground that is supported by the record."). Two theories arguably consistent with the appellate decision - - but not referred to in the court's opinion - - for the granting of a new trial are considered below.

## II. New Trial on Failure of Trial Judge to Know He Had Discretion to Inform Jury of Five Year Minimum

A.  Analysis

During trial, the trial court believed that it had no discretion to grant defendant's request for the jury to be informed that a conviction on a charge of receipt of child pornography over the internet would result in a minimum sentence of five years imprisonment. *See Polouizzi*, slip op. at 14 ("the district court explained that it erred because, believing erroneously that it had no discretion to instruct the jury about the mandatory minimum sentence, it failed to exercise its discretion to give such an instruction"). After the verdict, the trial court concluded that it did have such discretion. It determined that if it had recognized its discretion during the trial, it would have exercised its discretion to so inform the jury. As determined by questions to the jurors and their answers, this instruction would probably have had a profound effect on the verdict. *See Polouizzi*, slip op. at 11-13; *Polizzi*, 549 F. Supp. 2d at 339-41. *Cf. Woodson v. North Carolina*, 428 U.S. 280, 293 (1976) ("[A] crucial indicator[] of evolving standards of decency respecting the imposition of punishment in our society [are] jury determinations . . . point[ing] conclusively to the repudiation of automatic death sentences.").

If a trial judge believes he or she has no discretion to act to protect a defendant, and if the

2

act would have been significant in resolving an issue critical to defendant's rights, a serious error

of law has occurred. *See, e.g., United States v. Regalado*, 518 F.3d 143, 147-48 (2d Cir. 2008)

("Since the district court was . . . unaware of (or at least insecure as to) its discretion . . . there

was an unacceptable likelihood of error. . . . If the district court did not fully appreciate the extent

of its discretion . . . there was an error . . . [and] such error would be plain."); *United States v.*

*Campo*, 140 F.3d 415, 418-19 (2d Cir. 1998) ("[A] court's failure to appreciate its authority . . .

constitutes an error of law. . . . our task is . . . simply to ensure that the court actually makes the

discretionary judgment that the law allows and expects it to make."); *Davidson v. Riley*, 44 F.3d

1118, 1124-26 (2d Cir. 1995) (holding that when the trial court defers entirely to those guarding

a prisoner *pro se* plaintiff as to whether he be shackled during trial, it has failed to exercise its

discretion and harmless error analysis applies in deciding whether judgment should be vacated

and remanded); *cf. McKeever v. Israel*, 689 F.2d 1315, 1319-20 (7th Cir. 1982) ("The district

court failed entirely to exercise its discretion . . . because it did not recognize its authority to

appoint counsel. . . . The failure of the trial court to exercise its discretion . . . was an abuse of

discretion.").

The opinion of the Court of Appeals for the Second Circuit may be read as indicating the

trial court had discretion to inform the jury of the mandatory minimum sentence. It noted that

the trial court's refusal to instruct the jury was "a course that was certainly within its discretion,"

slip. op. at 28, implying that discretion existed to instruct. Yet, the opinion explicitly states that

"it [was] not necessary to decide whether it would have been within the district court's discretion

to inform the jury of the applicable mandatory minimum sentence." *Polouizzi*, slip. op. at 32-33.

Since the appellate panel reversed the grant of a new trial on this ground, it can be assumed for

purposes of this memorandum – contrary to the thrust of its language suggesting discretion – that

it found no discretion, no error in failing to exercise it, and, therefore, no basis for a finding of error in the failure of the trial court to recognize and exercise its discretion during trial.

B.    Conclusion

As to a new trial on the issue of the failure of the court to know it had, and to exercise, discretion to inform the jury of the five year minimum sentence, unless the Court of Appeals for the Second Circuit modifies its opinion to indicate that the trial court may order a new trial on this discretion issue, a new trial will be denied on this ground after remand.

Whether discretion should be exercised to inform were a new trial granted on another ground need not now be decided. It is to this other ground that this memorandum now turns.

### III. New Trial on Overindictment and Resulting Prejudice

A.    Analysis

The trial court charged, and the defendant was convicted by the jury on, eleven counts of possession of child pornography and twelve counts of receipt of child pornography. The Court of Appeals for the Second Circuit ordered vacatur of all but one of the eleven possession counts, and suggested that convictions for eight of the twelve receipt counts be vacated on remand, leaving a total of five crimes rather than twenty-three as having been properly charged.

It is now apparent that the case was unduly expanded by extreme overindictment. "Multiplicity" occurs when a single offense is charged as several counts in a criminal indictment. *See* 1A Charles Alan Wright & Andrew D. Leipold, *Federal Practice & Procedure: Criminal* § 142 (4th ed. 2008). A multiplicitous indictment creates an exaggerated impression of a defendant's criminal activity by charging "an offense multiple times, in separate counts, when, in law and fact, only one crime has been committed." *United States v. Chacko*, 169 F.3d 140, 145 (2d Cir. 1999).

4

The appropriate post-trial remedy for overindictment through multiplicitous counts is, in most cases, vacatur of the redundant convictions and resentencing. *See Ball v. United States*, 470 U.S. 856, 864-65 (1985); *United States v. Holmes*, 44 F.3d 1150, 1156 (2d Cir. 1995); *United States v. DiGeronimo*, 598 F. 2d 74, 749-51 (2d Cir. 1979). In general, "[t]he chief danger raised by a multiplicitous indictment is the possibility that the defendant will receive more than one sentence for a single offense." *United States v. Galvan*, 949 F.2d 777, 781 (5th Cir. 1991) (internal citations omitted). *See also United States v. Dixon*, 509 U.S. 688, 696 (1993); *United States v. Morgan*, 51 F.3d 1105, 1108 (2d Cir. 1995).

Yet, the serious prejudicial impact of a multiplicitous indictment at trial in a case such as the present one warrants concern. *See United States v. Reed*, 639 F.2d 896, 904 (2d. Cir. 1981) ("The vice in multiplicity of charges is that it may lead to multiple sentences for the same offense and *may improperly prejudice a jury by suggesting that a defendant has committed not one but several crimes.*") (emphasis added); *United States v. Ketchum*, 320 F.2d 3, 7 (2d Cir. 1963) (finding that the objectives of preventing multiplicitous counts are "primarily those of promoting the order and efficiency of the trial and avoiding the risk that the prolix pleading *may have some psychological effect upon a jury*" by overstating the level of the defendant's criminal activity) (internal quotation marks and citation omitted; emphasis added); *United States v. Carter*, 576 F.2d 1061, 1064 (3d Cir. 1978) (multiplicitous indictment "may prejudice the jury against the defendant by *creating the impression of more criminal activity on his part than in fact may have been present.*") (emphasis added); *United States v. Langford*, 946 F.2d 798, 802 (11th Cir. 1991) (multiplicitous indictment "may improperly prejudice a jury by *suggesting that a defendant has committed several crimes – not one*") (emphasis added); *United States v. Duncan*,

850 F.2d 1104, 1108 n.4 (6th Cir. 1988) (multiplicitous counts *"may falsely suggest to a jury that a defendant has committed not one but several crimes"*) (emphasis added).

District courts presented with what are recognized before or during trial to be multiplicitous indictments will avoid any problem by requiring the prosecution to elect between counts charged rather than by merging the counts at sentencing. *See, e.g., United States v. Clarridge*, 811 F. Supp. 697, 702-07 (D.D.C. 1992) (requiring government to elect between multiplicitous counts of false statements and perjury). The reason for keeping unnecessary counts from the jury is that, "[o]nce such a message [of repeated crimes] is conveyed to the jury, the risk increases that the jury will be diverted from a careful analysis of the conduct at issue," and "[c]ompromise verdicts or *assumptions that, with so many charges pending the defendant must be guilty on at least some of them, pose significant threats to the proper functioning of the jury system*." *Id.* at 702 (emphasis added).

If the profound risk of prejudice and a miscarriage of justice has not been negated before or at trial, a new trial is warranted. Here, neither the parties nor the trial court were aware of the serious overcharging before receiving the verdict since the appellate court ruled that defendant had been overindicted as a matter of first impression on this appeal.

While curative instructions to the jury on how to appropriately consider each individual crime charged may under some circumstances adequately avoid prejudice to a defendant faced with multiplicitous counts, *see United States v. Chipps*, 410 F.3d 438, 449 (8th Cir. 2005), once the impression of enhanced criminal activity "'is conveyed to the jury, *the risk increases that the jury* will be diverted from a careful analysis of the conduct at issue,' and will reach a compromise verdict or *assume the defendant is guilty*." *United States v. Johnson*, 130 F.3d 1420, 1426 (10th Cir. 1997) (quoting *Clarridge*, 811 F. Supp. at 702) (emphasis added).

Concerns over prejudice from overcharging may in some cases appropriately be addressed through vacatur of the redundant convictions and resentencing on those that remain if, at a retrial on the reduced number of counts, the body of evidence would be essentially identical and the new trial "would lead inexorably to conviction again." *United States v. Langford*, 946 F.2d 798, 805 (11th Cir. 1991). *See United States v. Johnson*, 130 F.3d 1420, 1426 (10th Cir. 1997) (multiplicity does not require retrial in cases of "harmless error"); *cf. United States v. Lane*, 474 U.S. 438, 449 (1986) (misjoinder of counts does not require reversal if it is "harmless error"). But where, as here, there is reason to believe that a properly constructed indictment would have led to more limited evidence at trial *and a different verdict on the sanity issue*, the unlawful prosecution of multiplicitous counts cannot be considered harmless, and a retrial is warranted to ensure due process. *See United States v. Matthews*, 240 F.3d 806, 818 (9th Cir. 2000), *overruled on other issues by* 278 F.3d 880 (9th Cir. 2002) (en banc) (suggesting a new trial might be the remedy if the dismissal of multiplicitous counts would have altered the evidence introduced at trial).

All the evidence presented at trial would arguably be relevant to the indictment as sharply reduced by the appellate court, but the trial court would have been likely to reduce the length of the trial and the evidence admitted under Federal Rules of Evidence 403 and 404(b) had the trial proceeded on five counts rather than twenty-three. The quantity of evidence presented to the jury had unusual significance in this case, where much of it consisted of disgusting and highly inflammatory images and videos of young children being abused sexually. *See Polizzi*, 549 F. Supp. 2d at 319.

In addition, much of the evidence introduced proving counts now to be stricken might not have been admitted at trial on a shorter indictment. This consideration alone would support a

new limited trial on fewer counts to ensure against the prejudicial impact of unduly repetitive inflammatory evidence.

The Court of Appeals for the Second Circuit concluded that maintaining multiplicitous convictions in the instant case "would seriously affect the fairness, integrity, or public reputation of judicial proceedings." *Polouizzi*, slip op. at 23. Although the jury was properly instructed to give no weight to the indictment, a new trial on the dramatically reduced number of possession and receipt counts would seem warranted to protect the "fairness, integrity, and public reputation of judicial proceedings." *Id.*

The discretion on whether to order a new trial in such unusual circumstances as now exist in the present case should rest with the trial judge. He or she, who observed the witnesses and the jury in a highly emotionally charged case such as the present one, may be better able than the appellate court, relying on the cold record, to appreciate the effect of extra counts and evidence on jurors.

An experienced jurist or lawyer may see no essential difference between an indictment for child pornography charging five counts and an indictment charging twenty-three counts, but it is not unlikely that a lay juror would be prepared to find a defendant guilty more readily if he were tried for twenty-three rather than five separate child pornography crimes. Child pornography is a crime that elicits strong emotions in the average juror. "[E]ven when cautioned, juries are apt to regard with a more jaundiced eye a person charged with two crimes than a person charged with one." *United States v. Smith*, 112 F.2d 83, 85 (2d Cir. 1940). *See also* U.S. Dep't of Justice, United States Attorneys' Manual, tit. 9, Criminal Resource Manual 215 (1997) ("In order to promote the fair administration of justice, as well as the perception of justice, all United States Attorneys should charge . . . as few separate counts as are reasonably

8

necessary to prosecute fully and successfully . . . . To the extent reasonable, indictments . . . should be limited to fifteen counts or less."); *cf. People v. Jackson*, 87 N.Y.2d 782, 786 (1996) ("[when] Trial Judges were powerless to reduce counts in indictments based on evidentiary insufficiency . . . it was not uncommon for defendants to stand trial on and ultimately be convicted of crimes for which there had not been sufficient evidence before the Grand Jury"). The increased number of crimes charged may well have caused the jury to consider the defendant's conduct more systematic and widespread than it would have were the charges reduced – with the foreseeable result that it would be less likely to find him insane, providing a reason for his escaping the punishment and the incarceration that would protect children in the future.

Assessing the credibility of defendant's explanations for his actions when he took the stand might also have been affected by the multitude of counts. Some jurors might well think a witness who committed many crimes was more likely to lie than one who committed a few. The eight-page long verdict sheet necessarily created in the minds of jurors the picture of a recidivist consumer of child pornographer, since it required twenty-three separate findings of guilt on non-guilt.

The only serious issue that troubled the jury at trial was the defendant's sanity – a matter which the notes and requests of the jury during deliberations indicated was critical. *See Polouizzi*, slip op. at 9-11. The multiple count indictment with twenty-three separate crimes of child pornography could not have failed to affect many laypersons' analysis of the sanity issue.

It was the defendant, not the government, who had the burden of proof on insanity. *See Polizzi*, 549 F. Supp. 2d at 331. Overcharging effectively increased the burden of proof on this critical issue.

9

It is reasonable to conclude that the defendant's case and the defendant were to a high probability handicapped and seriously prejudiced by his trial of twenty-three rather than five crimes. *Cf. Matthews*, 240 F.3d at 818. Under these circumstances, it is likely that the jury verdict would have been different had overcharging not occurred.

B.   Conclusion

As to a new trial on the issue of prejudice to defendant because of the trial on an overindictment, unless the Court of Appeals for the Second Circuit indicates this course of action is inappropriate, under the special conditions of the present case a new trial of both possession and receipt counts on this ground should be granted on remand.

**IV. Caveat**

This memorandum is for the advice of the parties only. It is subject to the appellate process, and to revisitation at the time of post-appeal motions and sentence after briefing and argument of the parties on any issue they bring to this court's attention.

Jack B. Weinstein
Senior United States District Judge

Date:   April 30, 2009
Brooklyn, New York

10