UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK



FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ MAR 2 4 2010 ★

BROOKLYN OFFICE

UNITED STATES OF AMERICA,

                Plaintiff,

        - against –

PETER POLOUIZZI,

                Defendant.

MEMORANDUM
AND ORDER

06-CR-22 (JBW)

## Table of Contents

I.    Introduction.................................................................................................2

II.   Facts..........................................................................................................2

III.  Law .............................................................................................................4

     A.   Mandatory Electronic Monitoring .........................................................4

     B.   Constitutionality................................................................................5

          1.   "Facial" versus "As-Applied" Challenges ........................................7

          2.   Procedural Due Process...................................................................8

          3.   Excessive Bail ...............................................................................9

          4.   Separation of Powers.....................................................................12

IV.   Application of Law to Facts ....................................................................13

     A.   Procedural Due Process ...................................................................13

          1.   Application of *Mathews* Balancing Test .........................................13

               a) Private Interest and Risk of Erroneous Deprivation.....................13

               b) Governmental Interest ..............................................................15

          2.   Application of *Medina* Fundamental Justice Test.............................19

     B.   Excessive Bail ................................................................................20

     C.   Facial and As-Applied Violations.......................................................21

V.    Conclusion ...............................................................................................22



## I. Introduction

Defendant is awaiting trial, his original conviction on charges of receipt and possession of child pornography having been set aside. *See* 18 U.S.C. §§ 2252(a)(2); 2252(a)(4)(B); *United States v. Polouizzi* (*Polouizzi V*), No. 06-CR-22, 2010 WL 318265, *2 (E.D.N.Y. Feb. 11, 2010) (Am. Mem. & Order Granting New Trial). His bail conditions include electronic monitoring, mandated by Section 216 of Title II of the Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, 120 Stat. 587 (codified at 18 U.S.C. § 3142(c)(1)(B)). *See also* Bail Hr'g Tr. 6:21-7:4, Aug. 5, 2008, Docket Entry No. 176; Order Setting Conditions of Release & Bond, Aug. 15, 2008, at 3, Docket Entry No. 173. Contending that the Act is unconstitutional as applied, he moves for cancellation of this condition. Mem. of Law to Modify Bail Conditions 9-12, Docket Entry No. 224.

The motion is granted. As applied in this case, the statutorily mandated bail condition requiring the wearing of an electronic tracking device is unconstitutionally excessive and was imposed in violation of defendant's constitutional right to due process. Wearing of the electronic bracelet shall no longer be required by the defendant while he awaits trial. If there is a change in circumstances, the government may apply for reimposition.

## II. Facts

Defendant's crime of conviction was receiving and watching child pornography on his computer screen behind locked doors. So far as is known, he has never molested any person, sexually or otherwise. *Polouizzi I*, 549 F. Supp. 2d. 308, 320, 323-26 (E.D.N.Y. 2008) (finding of trial court); *Polouizzi V*, 2010 WL 318265, at *2 (same); Hr'g Tr. 6:19-24 Oct. 22, 2007,

Docket Entry No. 106 (observation of magistrate judge that "there [was] expert opinion offered [at trial] that the defendant does not pose any danger to any minors," and "no evidence . . . that defendant has in any way engaged in conduct that would result in harm to any member of the community"). "[He] has a good relationship with his wife and five sons, and has been a model citizen and . . . entrepreneur except for this one aberrant offense." *United States v. Polizzi*, 2008 WL 1820900, at *4 (E.D.N.Y. Apr. 8, 2008) (Statement of Reasons Pursuant to 18 U.S.C. § 3353(c)(2)). Since his arrest in 2006, the defendant has been successfully engaged in continuing intensive mental health treatment. He has complied fully with the terms of bail and supervision while living with his family and operating his restaurant. *See Polouizzi V*, 2010 WL 318265, at *21 (finding of trial court); Order to Show Cause, Jan. 15, 2010, Docket Entry No. 219 (same); Order to Show Cause Hr'g Tr. 2:17-19, Jan. 22, 2010 (statement of probation services).

As conditions of bail there were imposed the following requirements: (1) prohibition on association with minors, except in presence of guardian; (2) surrender of passport; (3) random drug testing; (4) mental health treatment; (5) home detention with electronic monitoring; (6) prohibition on use of family's computer; (7) prohibition on entering son's bedroom; and (8) a one million dollar bond secured by defendant's home and other properties. *See* Order Setting Conditions of Release on Bond, Aug. 15, 2008, Docket Entry No. 173; Order Setting Conditions of Release on Bond, Apr. 4, 2007, Docket Entry No. 43.

Only after the government demanded that the defendant be ordered to wear an electronic tracking bracelet in reliance on the mandate of the Adam Walsh Act was this condition added. *See* Bail Hr'g Tr. 6:21-7:4, Aug. 5, 2008. Without the statutory mandate, this condition would not have been imposed.

# III. Law

## A. Mandatory Electronic Monitoring

The Bail Reform Act of 1984 outlawed excessive bail requirements for defendants pending trial. Pub. L. No. 98-473, 98 Stat. 1976 (codified as amended at 18 U.S.C. §§ 3141-3156). *See, e.g.*, 18 U.S.C. § 3142(c)(1)(B) (obligating court to fashion bail package with "least restrictive condition or combination of conditions"); S. Rep. No. 98-225, at 10 (1983), *as reprinted in* 1984 U.S.C.C.A.N 3182, 3194 ("[T]he pretrial detention provision of Section 3142 . . . [disallows] the imposition of excessively high money bond[s].)"; Bail Reform, Hearings Before the Subcommittee on the Constitution of the Committee on the Judiciary, 97th Cong. 154 (1981); Senator Edward M. Kennedy, *A New Approach to Bail Release: The Proposed Federal Criminal Code and Bail Reform*, 48 Ford. L. Rev. 423, 429-35 (1980). Similar concerns animated the Bail Reform Act of 1966. *See, e.g.*, S. Rep. No. 98-225, at 3 (1983), *as reprinted in* 1984 U.S.C.C.A.N. 3182, 3187-88 (stating that the "primary purpose" of the 1966 Act was "to deemphasize the use of money bonds . . . which was perceived as resulting in disproportionate and unnecessary pretrial incarceration of poor defendants"); Hearings on H.R. 3576, H.R. 3577, H.R. 3578, H.R. 5923, H.R. 6271, H.R. 6934, H.R. 10195 and S. 1357 before the House Committee on the Judiciary, Federal Bail Reform, Mar. 9-16, 1966, at 16 (statement of Representative William McCulloch) ("[P]retrial freedom is too often needlessly denied."); *id.* at 17 (statement of Senator Sam J. Ervin) (similar). *See also, e.g.*, *United States v. Joyeros*, 204 F. Supp. 2d 412, 434-35 (E.D.N.Y. 2002) (detailing history and motivations of bail reform); Note, *The Eighth Amendment and the Right to Bail: Historical Perspectives*, 82 Col. L. Rev. at 362 n.13 (discussing evolution of constitutional prohibition against excessive bail).

In 2006, the Adam Walsh Act amended the Bail Reform Act to require that "[i]n any case that involves a minor victim under section . . . 2252(a)(2) [receipt of child pornography by any means including computer] . . . *any release order shall contain, at a minimum* . . . a condition of electronic monitoring." H.R. 4472, Pub. L 109-248, 10 Stat. 587 (July 27, 2006) (codified in relevant part at 18 U.S.C. § 3142(c)(1)(B)) (emphasis added). The requirement covers pre-trial and post-bail; it is plain, unambiguous, and mandatory. *But see United States v. Kennedy*, No. 09-30054, 2009 WL 1220763, at *1 (9th Cir. May 9, 2009) (construing the Adam Walsh Act "*to require the district court to exercise its discretion, to the extent applicable, in applying the mandatory release conditions*") (emphasis added); *United States v. Cossey*, 637 F. Supp. 2d 881, 889 (D. Mont. 2009) (applying *Kennedy*).

The judgment of conviction having been vacated, the present defendant is treated as a *charged*, not as a convicted child pornographer. The question now posed is whether the pretrial condition of curfew with electronic monitoring mandated by the Adam Walsh Act is unconstitutional as applied in view of this court's finding that electronic monitoring is not needed to avoid flight or any danger to children or to society. The answer: The Adam Walsh Act is unconstitutional as applied to this defendant under present circumstances.

**B. Constitutionality**

The Eighth Amendment provides "excessive bail shall not be required." U.S. amend. VII. This limit of federal authority applies to the states. *See Kennedy v. Louisiana*, 128 S.Ct. 2641, 2649 (2008) ("The Eighth Amendment, applicable to the States through the Fourteenth Amendment, provides that 'excessive bail shall not be required' . . . ."); *Schilb v. Kuebel*, 404 U.S. 357, 365 (1971) ("[T]he Eighth Amendment's proscription of excessive bail has been

5

assumed to have application to the States through the Fourteenth Amendment."). Excess bail is banned as part of the panoply of integrated constitutional limitations on both the states and the national government in criminal cases, and in requiring due process for defendants accused of crimes. *See, e.g., United States v. Salerno*, 481 U.S. 739, 745 (1987) (recognizing that federal bail provisions are subject to constitutional limitations of due process and excessive bail); *Bell v. Wolfish*, 441 U.S. 520, 535(1979) ("[C]onditions or restrictions of pretrial detention . . . implicate . . . protection against liberty without due process of law . . . .").

The weight of *nisi prius* authority is that the Adam Walsh Act is unconstitutional in cases such as the present one, since it requires imposition of electronic monitoring without discretion in all cases falling within the statute's ambit. *See, e.g., United States v. Smedley*, 611 F. Supp. 2d 971, 974-77 (E.D. Mo. 2009) (holding that Adam Walsh Act violates Fifth Amendment's guarantee of procedural due process); *United States v. Merritt*, 612 F. Supp. 2d 1074, 1077-80 (D. Neb.2009) (same); *United States v. Rueb*, 612 F. Supp. 2d 1068, 1074 (D. Neb. 2009) (same); *United States v. Vujnovich*, No. 07-20126-01-CM-DJW, 2008 WL 687203, at *2-3 (D. Kan. Mar. 11, 2008) (same); *United States v. Torres*, 566 F. Supp. 2d 591, 596-99, 601 (W.D. Tex. 2008) (holding that Adam Walsh Act violates the Eighth Amendment's prohibition against excessive bail and the Fifth Amendment's guarantee of procedural due process); *United States v. Arzberger*, 592 F. Supp. 2d 590, 601 (S.D.N.Y. 2008) (holding that Adam Walsh Act violates Fifth Amendment's guarantee of procedural due process); *United States v. Crowell*, Nos. 06-M-1095, 06-CR-291E(F), and 00-CR-3045(F), 2006 WL 3541736, at *7, *10 (W.D.N.Y. Dec. 7, 2006) (holding that Adam Walsh Act violates the Eighth Amendment's prohibition against excessive bail, the Fifth Amendment's guarantee of procedural due process, and separation of powers). *But see Kennedy*, 2009 WL 1220763, at *1 (finding "no constitutional infirmity in the

Adam Walsh Act," where it was "*constru[ed] . . . to require the district court to exercise its discretion*, to the extent applicable, *in applying the mandatory release conditions*") (emphasis added); *Cossey*, 637 F. Supp. 2d at 889-90 (same); *United States v. Gardner*, 523 F. Supp. 2d 1025 (N.D. Cal. 2007) (holding that Adam Walsh Act does not violate procedural due process, require excessive bail, or violate separation of powers); *but cf. United States v. Stephens*, 594 F.3d 1033, 1037 (8th Cir. 2010) (reversing district court decision holding that Adam Walsh Act violates Fifth Amendment's guarantee of procedural due process, where record was "devoid of any factual context" about the defendant or his circumstances).

1. "Facial" versus "As-Applied" Challenges

In a successful facial challenge to constitutionality, there are "no set of circumstances . . . under which [the statute] would be valid." *Salerno*, 481 U.S. 739 at 745. *See Diaz v. Paterson*, 547 F.3d 88, 101 (2d Cir. 2008) (applying *Salerno* standard in evaluating facial constitutional challenge). *But see Washington v. Glucksberg*, 521 U.S. 702, 739-40 (1997) (Stevens, J., concurring) (observing that standard for assessing facial challenges has been the subject of debate in the Supreme Court).

In an as-applied challenge, the question is whether the statute would be unconstitutional if applied literally to the facts of the case. *Cf. Field Day LLC v. County of Suffolk*, 463 F.3d 167, 174 (2d Cir. 2006). Factual context and defendant's circumstances are critical. *See, e.g., Arzberger*, 592 F. Supp. 2d at 599. A sequential analysis, putting off facial challenges, permits the courts to protect the constitutional rights of individual defendants in particular situations, while avoiding the unnecessary striking down of a congressional enactment. *See Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450 (2008) (noting that facial

invalidation contravenes the "fundamental principle . . . that courts . . . should [not] formulate a rule of constitutional law broader than is required by the precise facts to which it is applied").

2. Procedural Due Process

"[N]o person shall . . . be deprived of . . . liberty . . . without due process of law." U.S. Const. amend. V. "Due process is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (quotation marks and alteration omitted). When evaluating a procedural due process claim, considered are: (1) whether there is a constitutionally protected liberty interest at stake, and, if so (2) whether there are adequate procedural safeguards in place to protect it. *See Kapps v. Wing*, 404 F.3d 105, 112 (2d Cir. 2005).

In determining whether procedural safeguards are adequate, *Mathews v. Eldridge* requires balancing of: (1) "the private interest that will be affected by the official action," (2) "the risk of erroneous deprivation of such interest through procedures used," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 321.

The government contends that the appropriate standard of review is the less stringent one of *Medina v. California*, 505 U.S. 437, 445 (1992), to wit, a rule of criminal procedure does not violate procedural due process unless it "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Id.* at 445 (quotation marks and citations omitted). The argument is not persuasive. The *Medina* court's reluctance to apply the more protective *Mathew*'s balancing test was expressed in evaluating *state* law; it gave weight to federalism's comity considerations having little bearing in the instant federal criminal

prosecution. As the court noted, "crime is much more the business of the States than it is of the Federal Government . . . and . . . we should not lightly construe the Constitution so as to intrude upon the administration of justice by the individual States." *Id.* (quotation marks and citations omitted).

The courts that have addressed the constitutionality of the Adam Walsh Act under a procedural due process analysis have not relied upon *Medina*. *See, e.g., Arzberger*, 592 F. Supp. 2d at 600 (applying *Mathews* test); *Torres*, 566 F. Supp. 2d at 596-97 (same); *Crowell*, 2006 WL 3541736, at \*7-\*10 (same). *See also United States v. Stephens*, 669 F. Supp. 2d. 960, 966-69 (N.D. Iowa 2009), *overruled on other grounds*, 594 F.3d 1033. But, as demonstrated below, *see infra* Section IV.A.2, even assuming *arguendo* that the *Medina* test should be imposed, the Act is unconstitutional as applied.

3. Excessive Bail

The Supreme Court has defined "excessive bail" under the Eighth Amendment as "bail set at a figure higher than an amount reasonably calculated to fulfill [its] purpose." *Stack v. Boyle*, 342 U.S. 1, 5 (1951). *See also Salerno*, 481 U.S. at 752-54 (discussing *Stack*). To determine whether the government's requirement of bail would be excessive, the court compares the government's request against the interest it seeks to protect. *Id.* at 754.

The excess can be reflected in monetary terms or in other limitations on defendant's freedom such as curfews, house arrests, limits on employment, or electronic monitoring. *See, e.g., United States v. Scott*, 450 F.3d 863, 866 n.5 (9th Cir. 2006) ("In some instances—when flight would be irrational, such as when the crime involves a minor traffic infraction—*any* amount of bail may be excessive because the bail amount would not serve the purpose of ensuring appearance in court to answer the charges.") (emphasis in original); *United States v.*

9

*Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985) (observing that non-financial conditions, including pretrial services supervision, travel restrictions, and surrender of passport and green card may be "excessive" under the Eight Amendment). The excess must be more than *de minimus*. *See Arzberger*, 592 F. Supp. 2d at 605 (*citing Slack*, 342 U.S. at 1). Required wearing of an electronic bracelet, every minute of every day, with the government capable of tracking a person not yet convicted as if he were a feral animal would be considered a serious limitation on freedom by most liberty-loving Americans.

In common parlance, "excess" means "more than necessary". *See, e.g.*, Compact Oxford English Dictionary 500 (2d ed. 2002) ("beyond what is necessary"); Webster's Third New International Dictionary, Unabridged 792 (1993) ("beyond sufficiency, necessity"); I Bouvier's Law Dictionary 1108 (1914) ("more . . . than necessary"); A Dictionary of Law 451 (West 1891) (same). *But see* The Compact Oxford English Dictionary 500 (2d ed. 2002) ("exceedingly great"); I Bouvier's Law Dictionary 1108 (1914) (excessive bail "unreasonably great and clearly disproportionate to the offense"); A Dictionary of Law 427 (T.H. Flood and Co., 1889) (same).

Legal indicia from the 17th and 18th centuries considering bail limitations suggest a vanilla definition of "excessive" without strong adjectives—leaving to the courts the problem of ascertaining what is greater than needed in the particular circumstances of each case. *See, e.g.*, 1 Annals of Congress 782-83 (J. Gales ed. 1789) (statement of Rep. Livermore during summary debate on Eighth Amendment) ("[I]t [the Excessive Bail Clause] seems to have no meaning . . . What is meant by the terms excessive bail? Who are to be the judges? *It lies with the court to determine*.") (emphasis added); William Blackstone, 3 Commentaries, *297 (1922) ("[I]t is expressly declared by statute . . . that excessive bail ought not to be required; though *what bail should be called excessive must be left to the courts*, on considering the circumstances of the

10

case, to determine.") (emphasis added); Judiciary Act of 1789, ch. 20, 1 Stat 91 (permitting bail to be set by a judge "who shall exercise . . . discretion . . . regarding the nature and circumstances of the offense"). *See also* Caleb Foote, *The Coming Constitutional Crisis in Bail*, 113 U. Penn. L. Rev. 959, 966 (1965) (discussing shift to judicial discretion from mandatory nonbailable crimes while defendant was awaiting trial, noting that "the most critical steps in this process— the Petition of Right of 1628, the Habeas Corpus Act of 1679, and the Bill of Rights of 1689— grew out of cases which alleged abusive denial of freedom on bail pending trial") (footnotes omitted). *See also, e.g.*, Samuel Wiseman, *Discrimination, Coercion, and the Bail Reform Act of 1984: The Loss of the Core Constitutional Protections of the Excessive Bail Clause*, 36 Ford. Urb. L. J. 121 (2009); Donald J. Harris, *The Vested Interests of Judge: Commentary on Flemming's Theory of Bail*, 1983 Am. Bar Found. 490 (1983).

The bland "excessive bail" limitation historically defined as "no more than is necessary," is to be contrasted with the strong adjectives attached to "punishments" in the Eighth Amendment, *viz.* "cruel and unusual." *See, e.g., Gregg v. Georgia*, 428 U.S. 153, 170 (1972) ("The American draftsman who adopted the English phrasing [from the English Bill of Rights] in drafting the Eight Amendment, were primarily concerned . . . with proscribing "'tortures' and other 'barbarous' methods of punishment.") (citing statements during debates in various state conventions called to ratify the Federal Constitution). *See also, e.g.*, Anthony F. Granucci, *"Nor Cruel and Unusual Punishments Inflicted:" The Original Meaning*, 57 Cal. L. Rev. 839, 839-42 (1969) (noting that American framers understood "cruel and unusual" to mean "barbarous," as opposed to "merely excessive."); *id.* at 843-44 (arguing that, contrary to the interpretation of American framers, before the English Bill of Rights was adopted in 1689, Great Britain had "a general policy against excessive[] . . . [but] not . . . 'barbarous' punishments") (quotation marks

omitted). *Cf. Kennedy v. Louisiana*, 128 S. Ct. 2641, 2649 (2008) ("The [Eighth] Amendment proscribes . . . *cruel and unusual punishments* that *may or may not be excessive*.") (emphasis added; quotation marks omitted). *But cf. United States v. Bajakajian*, 524 U.S. 321, 321-27 (1998) (applying "cruel and unusual" precedents in determining whether a fine is unconstitutionally "excessive," in recognition of the fact that fines are necessarily punitive).

Bail conditions are unconstitutionally excessive if they impose restraints that are more than necessary to achieve the government's interest—in this case, preventing risk of flight and of danger to society or children. *See Salerno*, 481 U.S. at 754. *See also, e.g., Crowell*, 2006 WL 3541736, at *7 (stating that bail conditions of Adam Walsh Act are "excessive" for purposes of Eighth Amendment if the government's legitimate interest in community safety could be achieved with "less onerous conditions").

4. Separation of Powers

Violation of separation of powers theory does not provide a sufficient basis for declaring the Adam Walsh Act unconstitutional. Congress has a major role in regulating bail. The Bail Reform Act of 1984, for example, was protective of defendant's rights against imposition of excessive bail. *See* S. Rep. No. 98-225, at 11 (1983), *reprinted as* 1984 U.S.S.C.A.N. 3182, 3194 (stating that Act was intended to "promote candor, fairness, and effectiveness for society, the victims of the crime—and the defendant as well," and to enable courts to address the issue of pretrial criminality "honestly and effectively"); *Arzberger*, 592 F. Supp. 2d at 607 (discussing congressional powers in fixing and limiting bail); *Gardner*, 523 F. Supp. 2d at 1036 (finding no clear "authority directly addressing whether legislation such as the Adam Walsh Act . . . constitutes a violation of the separation of powers"). *See also, e.g., Chapman v. United States*, 500 U.S. 453 (1991) (rejecting separation of powers objection to mandatory minimum

sentences); *United States v. Gagliardi*, 506 F.3d 140 (2d Cir. 2007) (same). *See also* Monograph, Reform of Court Rule-Making Procedures 53 (1977) ("There has never been a fully compartmentalized separation of powers."). *But see Crowell*, 2006 WL 3541736, at *11 (relying on *Stack v. Boyle*, 342 U.S. 1, 4-5 (1951), for the conclusion that the judiciary alone is charged with "the fixing of bail" for each defendant "based upon standards relevant to the purpose of assuring the presence of that defendant").

## IV. Application of Law to Facts

### A. Procedural Due Process

1. Application of *Mathews* Balancing Test

Application of the *Mathews* balancing test requires finding the Adam Walsh Act's requirement of electronic monitoring unconstitutional as applied to this defendant in present circumstances.

a) Private Interest and Risk of Erroneous Deprivation

There is a valid liberty interest in freedom of movement that is arbitrarily and substantially reduced by the Adam Walsh Act. The right to travel from one place to another free of hindrances is a well established aspect of constitutionally protected private freedom. *See Kolender v. Lawson*, 461 U.S. 352, 358 (1983); *Williams v. Fears*, 179 U.S. 270, 274 (1900); *Ramos v. Town of Vernon*, 353 F.3d 171, 172 (2d Cir. 2003) (holding a town council's curfew for juveniles unconstitutional, noting that the "right to free movement is a vital component of life in an open society"); *Spencer v. Casavilla,* 903 F.2d 171, 174 (2d Cir. 1990) ("[T]he Constitution . . . protects the right to travel freely within a single state"). *See also, e.g., Arzberger*, 592 F.

13

Supp. 2d at 600-01; *Torres*, 566 F. Supp. 2d at 597 ("[A]n individual's right to freedom of movement among locations and the right to remain in a public place are fundamental to our sense of personal liberty protected by the Constitution."); *Smedley*, 611 F. Supp. 2d at 975 ("[L]iberty pending trial is the private interest at issue, and that interest is significant.").

A curfew, by its definition, restricts the ability of the defendant to move about in a public area during substantial periods of time. The condition of a mandatory curfew with an associated electronic monitoring bracelet imposed pursuant to the Adam Walsh Act substantially constrains freedom-of-movement liberty. *See, e.g., Arzberger,* 592 F. Supp. 2d at 600; *Smedley,* 611 F. Supp. 2d at 975; *Meritt,* 612 F. Supp. 2d at 1079; *Torres,* 566 F. Supp. 2d at 597. *But cf. Gardner,* 523 F. Supp. 2d. at 1032.

Electronic monitoring devices that inhibit straying beyond spatial home property limits, like those used to restrain pet dogs, are intrusive. Their requirement, when mandated and unnecessary, may constitute excessive bail in particular cases. *See, e.g., id.* at 1031-32 (constitutional finding limited to form of electronic monitoring); *Torres,* 566 F. Supp. 2d at 599 n.2 (construing *Gardner* as disapproving curfew plus electronic monitoring). Any form of mandatory curfew with electronic monitoring may infringe the strong liberty interest in freedom of movement. *See Arzberger,* 592 F. Supp. 2d at 600; *Smedley,* 611 F. Supp. 2d at 975; *Meritt,* 612 F. Supp. 2d at 1079; *Torres,* 566 F. Supp. 2d at 597.

Mandatory electronic monitoring with a curfew provides near certainty of erroneous deprivation of defendant's liberty interest in *some* cases. As one court noted: "[I]n the absence of any findings by Congress as to the efficacy of a curfew requirement, it cannot be assumed that courts would generally require a curfew for defendants charged with child pornography offenses

if such a condition were discretionary rather than mandatory." *Arzberger*, 592 F. Supp. 2d at 601 (citations omitted).

For those defendants not subject to the Adam Walsh Act, the Bail Reform Act recognizes the judicial officer's discretion to choose among fourteen specified conditions of the defendant's release. 18 U.S.C. § 3142(c). They include maintaining employment and obtaining an education, curfews and banning possession of dangerous weapons. *Id.* All conditions are at the judge's discretion to impose singly or cumulatively. *Id.*

"[T]he [Adam Walsh] Amendments, by mandating certain pretrial release conditions, effectively create an irrebuttable presumption that the appearance at trial of arrestees charges with certain crimes, and the safety of the community, cannot be reasonably assured without such conditions." *Crowell*, 2006 WL 3541736 at *9; 18 U.S.C. § 3142(c); *see also Gardner,* 523 F. Supp. 2d at 1032. It is certain that electronic monitoring will be unnecessary for *some* defendants. *See Merritt*, 612 F. Supp. 2d at 1079-80. Yet the Adam Walsh Act forecloses any individualized judicial consideration, requiring unjustified burdens on all accused persons, even those who present no risks. *See, e.g., Rueb*, 612 F. Supp. 2d at 1073; *Smedley*, 611 F. Supp. 2d at 975 ("Absent any individualized determination, there is simply no way of knowing whether the deprivation of liberty is warranted or wholly erroneous."); *Torres*, 566 F. Supp. 2d at 598 ("[W]ithout a judicial determination . . . there is no means of knowing whether the deprivation is erroneous or warranted.").

b) Governmental Interest

The Adam Walsh Act was enacted in an attempt to "protect children from sexual attacks and other violent crimes." Pub. L. No. 109-248, tit. II, 120 Stat 587, 588 (July 27, 2006). The governmental interest is both legitimate and compelling. *See, e.g., Smith v. Doe*, 538 U.S. 84, 84

(2003) (considering state requirement of public registration for *convicted* sex offenders, finding "legitimate" interest in public safety); *Salerno*, 481 U.S. at 749 (finding strong interest in preventing harm by arrestees). *See also, e.g., Gardner*, 523 F. Supp. 2d at 1030 (considering Adam Walsh Act's requirement of electronic monitoring); *Torres*, 566 F. Supp. 2d at 600 (same). Yet, despite congressional debate and findings regarding other provisions of the Adam Walsh Act, there were none with respect to electronic monitoring. *See Gardner*, 523 F. Supp. 2d at 1030 ("[T]he Adam Walsh [Act] contains no such express legislative findings or evidence"); *id.* at n.2 (*citing* 152 Cong. Rec. S8012-02); *Torres*, 566 F. Supp. 2d at 600 ("Congress did not engage in substantive debate nor develop supporting congressional reports with regard to the Adam Walsh Amendments at issue here.").

Assessment of the risk of future crime by particular individuals at this stage of our knowledge is hazardous and fraught with uncertainty. *See, e.g.*, Michael A. Wolff, *Evidence-Based Judicial Discretion: Promoting Public Safety Through State Sentencing Reform*, 83 N.Y.U. L. Rev. 1389, 1406 (2008) ("humility is justified"); Model Penal Code: Sentencing § 6B.09(1)-(2) cmt. a (Prelim. Draft No. 5, 2007) ("[T]he Code seeks to give transparency to [predictions of future offender behavior], *bring to bear relevant statistical knowledge where it exists*, incorporate clinical judgments where they can be most helpful, and subject the assessment process to the procedural safeguards available in the . . . courts.") (emphasis added). *See also, e.g.*, William Bernet & Anas Alkhatib, *Genomics, Behavior, and Testimony at Criminal Trials*, *in* The Impact of Behavior Sciences on Criminal Law 291, 311 (Nira A. Farahany ed., 2009) ("Sexual offenders are a heterogeneous lot. At one extreme, some are compulsive, violent, and sadistic – and very likely to offend again at the earliest opportunity. At the other extreme, some sexual offenders have simply manifested transitory bad judgment and are very unlikely to re-

offend."); Erica Beecher-Monas & Edgar Garcia-Rill, *Genetic Predictions of Future Dangerousness: Is there a Blueprint for Violence?*, *in* The Impact of Behavior Sciences on Criminal Law, *supra*, at 389, 395 ("Predictions of future dangerousness are widely admissible without any judicial inquiry into their scientific validity.") (footnote omitted).

In the instant case there is no statistical foundation for a finding of risk. And the particularized individual clinical and experiential factors suggest no danger that this defendant requires a tracking electronic bracelet to protect the children or public. For the purposes of constitutional assessment, no reasonable risk assessment warrants application of the Adam Walsh Act to this defendant at this time.

An interest in protecting community safety and children is significant, and congressional findings on this issue must be afforded great weight, but a *per se* rule that the governmental interest always outweighs the constitutional right of liberty denies due process. *See Rueb*, 612 F. Supp. 2d at 1073; *Merrit*, 612 F. Supp. 2d at 1079; *Crowell*, 2006 WL 3541736 at *10.

When required by the facts of individualized cases, mandatory conditions imposed upon those *accused* of having committed certain sex offenses, may include such limitations as: (1) no contact with minors absent direct adult supervision; (2) no contact with alleged victims; (3) electronic monitoring; and; (4) curfew. *See* 18 U.S.C. § 3142(c). There is no reason to suspect that courts will refrain from imposing necessary restrictions in individual cases as required to protect children.

As the *Torres* court aptly put the matter: "[T]he Government's interest [in] the safety of the community, and of children is certainly important. However, it is not clear to the [c]ourt how removing from judicial consideration whether a curfew with electronic monitoring is necessary to secure the safety of the community and of children improves that interest." *Torres*, 566 F.

17

Supp. 2d at 598; *see Merrit*, 612 F. Supp. 2d at 1079 ("[By] eviscerate[ing] the judicial review

and determination otherwise required under . . . the Bail Reform Act . . . the procedural due

process afforded is not only inadequate, it is non-existent."); *Rueb*, 612 F. Supp. 2d at 1073

(same); *Crowell*, 2006 WL 3541736 at *10 (same). The governmental "interest is in no way

diminished by conducting an individual evaluation of the need for a curfew." *Arzberger*, 592 F.

Supp. 2d at 601; *see also Smedley*, 611 F. Supp. 2d at 976.

      In *Salerno* the Supreme Court addressed the constitutionality of the Bail Reform Act of

1984 in view of due process considerations. At issue was the ability of a federal court to detain

an arrestee before trial, on a finding by "clear and convincing" evidence that detention is the only

way to reasonably insure the safety of the community. *Salerno*, 481 U.S. at 741. The Court

upheld the constitutionality of the statute's provision permitting "pretrial detention on the ground

that the arrestee is likely to commit future crimes." *Id.* at744, 750. It noted that the act "operates

only on individuals who have been arrested for . . . extremely serious offenses." *Id.* at 749. The

provision withstood constitutional scrutiny precisely because it included procedural

protections—including an individualized finding of risk to the public from failure to impose a

specific requirement—which are wholly absent from the Adam Walsh Act. The Court declared:

> [T]he Government must first of all demonstrate probable cause to believe
> that the charged crime has been committed by the arrestee, but that is not
> enough. In a full-blown adversary hearing, the Government must convince a
> neutral decisionmaker by clear and convincing evidence that no conditions
> of release can reasonably assure the safety of the community or any person .
> . . .
>     Under the Bail Reform Act [before its amendment by the Adam Walsh
> Act], *the procedures by which a judicial officer evaluates the likelihood of
> future dangerousness are specifically designed to further the accuracy of
> that determination.* Detainees have a right to counsel at the detention
> hearing. They may testify in their own behalf, present information by
> proffer or otherwise, and cross-examine witnesses who appear at the
> hearing. The judicial officer charged with the responsibility of determining
> the appropriateness of detention is guided by statutorily enumerated factors,

which include the nature and the circumstances of the charges, the weight of the evidence, the history and characteristics of the putative offender, and the danger to the community. The Government must prove its case by clear and convincing evidence. Finally, the judicial officer must include written findings of fact and a written statement of reasons for a decision to detain.

*Id.* at 750, 751-52 (internal citations omitted) (emphasis added).

The basic defect of the Adam Walsh Act, as applied, is that it imposes a mandatory limit on freedom of an accused without permitting an "adversary hearing." *Id. See Rueb*, 612 F. Supp. 2d at 1072 ("[T]he decision rests solely on the crime charged"); *Arzberger*, 592 F. Supp. 2d at 601 ("[T]he absence of procedural protections is universal"). Procedural protections embodied in the Bail Reform Act of 1984 and required by *Salerno* are far richer than those provided by the Adam Walsh Act. Under the latter, there can be no hearing, testimony, cross-examination, judicial weighing, or burden of proof.

2. Application of *Medina* Fundamental Justice Test

Even under the high *Medina* standard, the Adam Walsh Act violates due process. *Medina* suggests that a rule is unconstitutional only if "it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Medina*, 505 U.S. at 445. Adam Walsh offends such a principle of justice.

A basic rule of our system is that a defendant is presumed innocent until proven guilty. *See, e.g.*, *Coffin v. United States*, 156 U.S. 432, 453 (1895) ("[The] presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law."). *See also* United Nations Declaration of Human Rights, art. 11, para. 1 (1948) ("Everyone charged with a penal offence has the right to be presumed innocent until proved guilty according to law in public at trial . . . ."). The right to

non-excessive bail prior to trial is inextricably intertwined with the presumption of innocence. *See Stack*, 342 U.S. at 4 ("Unless this right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning."). *Cf. Salerno*, 481 U.S. at 745 n.3 (leaving open question whether pretrial restriction, absent any individualized determination of dangerousness, would constitute excessive bail or violate a defendant's substantive due process right not to be punished before valid finding of guilt at trial). General bail provisions reaffirm this foundational standard, stating that "[n]othing in this section shall be construed as modifying or limiting the presumption of innocence." 18 U.S.C. § 3142(j).

Congress, without any supporting facts, must have assumed in adopting the Adam Walsh Act that all defendants *charged* with possession or receipt of child pornography *must have their liberty interest in freedom of movement restrained* in order to "protect children from sexual attacks and other violent crimes." Pub. L. No. 109-248, 109 Stat. at 611. *See supra* Section IV.A.1 (discussing lack of congressional findings and uncertainty of risk assessments). The court need not now consider whether the imposition of electronic monitoring is so excessive as to constitute "punishment" in violation of this defendant's substantive due process rights. *See, e.g., Bell v. Wolfish*, 441 U.S. 520, 536 (1979) (explaining that due process prevents detainees from being punished before being found guilty). The unsupported assumption of Congress as basis for limiting liberty is procedurally invalid under *Medina*.

**B. Excessive Bail**

As applied to this defendant at this time, the Adam Walsh Act's mandatory condition of electronic monitoring is excessive. The government interest in protecting society is valid. Its response in this particular case is not. The child pornography pictures at issue were discovered

20

on a computer, in a double locked room, in the privacy of defendant's garage. The defendant poses no risk to society in general, or to children specifically. He has abided fully by requirements for mental health counseling, even giving lectures on sexual abuse. He has followed the strict rigors of home detention. Under these circumstances, this court finds that electronic monitoring is excessive, as applied to this defendant, "in light of the perceived evil." *Salerno*, 481 U.S. at 754; *see Torres*, 566 F. Supp. 2d at 593 (finding as-applied violation of Excessive Bail Clause, where defendant sex-offender was charged with failing to register or update registration after consistent registration for over three years).

## C. Facial and As-Applied Violations

Because the requirement of electronic monitoring violates the constitutional prohibition on excessive bail and guarantee of procedural due process *as applied* to this defendant at the present time, a facial challenge to the Adam Walsh Act need not be addressed. Under the *Salerno* standard, there must be no set of circumstances where the statute would be constitutional. *Salerno*, 481 U.S. at 745.

There will be situations where certain sex offenders require that Adam Walsh's most stringent conditions be imposed. *See Arzberger*, 592 F. Supp. 2d at 604 ("[T]here are plainly situations in which a defendant . . . would . . . be found to constitute a danger to the community . . . if not subjected to [these conditions]"); *Torres*, 566 F. Supp. 2d at 601; *Gardner*, 523 F. Supp. 2d at 1030.

The appropriate approach is to place the ruling in the present case on an as-applied theory. *Washington State Grange*, 552 U.S. at 450-51 ("Facial challenges . . . run contrary to the fundamental principle . . . that courts . . . should [not] formulate a rule of constitutional law

21

broader than is required by the precise facts to which it is to be applied."); *see also supra* Section III.B.1 (discussing facial versus as-applied challenges).

## V. Conclusion

The Adam Walsh Act's requirement of electronic monitoring is unconstitutional as applied in the present case at this time. Electronic monitoring shall be discontinued forthwith. This order is stayed for ten days to permit an appeal by the government.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Dated: March, 23, 2010
　　　Brooklyn, New York