UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

UNITED STATES OF AMERICA,

    -against-                                   **Docket No. 06-22(JBW)**

PIETRO POLIZZI,

       **Defendant.**


-------------------------------------------------------------X


## SECOND MEMORANDUM OF LAW IN REGARD TO
## PIETRO POLIZZI'S SENTENCING


 

**MITCHELL DINNERSTEIN, Esq.**
Attorney for Defendant, Pietro Polizzi
350 Broadway
Suite 700
New York, New York 10013
212-925-0793


*On the memorandum*
*Peter Goldberger*
*Of Counsel*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES...................................................................*i*

INTRODUCTION..............................................................................1

"VICKY" IS NOT A CRIME VICTIM OF THIS DEFENDANT
PIETRO POLIZZI..............................................................................4

DISTRIBUTORS OF CHILD PORNOGRAPHY........................................11

VICKY'S RETRAUMITIZATION OCCURRED FIRST BECAUSE OF HER
INITIAL VIEWING OF THE CHILD PORNOGRAPHY WEB SITE AND
SECONDLY BY THE GOVERNMENT CONTINUAL USE OF VICKY AS A
PURPORTED VICTIM IMPACT WITNESS IN THESE TYPES OF CASES...13

CAN THIS COURT SENTENCE MR. POLIZZI IN ACCORDANCE WITH
18 U.S.C. § 3553(a) DESPITE THE MANDATORY MINIMUM PROVISION
OF 18 U.S.C. § 2252?.........................................................................16

CONCLUSION.................................................................................22

# TABLE OF AUTHORITIES

Page

## CASES

Ashwander v. Tennessee Valley Authority,
297 U.S. 288, 348 (1936)………………………………………..20

Busic v. United States, 446 U.S. 398 (1980)…………..…………..20

Jones v. United States, 526 U.S. 227(1999)…………………………20

Kimborough v. United States, 552 U.S. 85 (2007)………………….19

United States v. Booker, 453 U.S. 220 (2005)…………………..…..18

United States v. C.R, 09 CR 115(JBW)……………….…….….…..5, 8, 13

United States v. Dorvee, 616 F. 3d.174 (2nd. Cir. 2010)……………15

United States v. Grober,  624 F. 3d 592, (3rd Cir. 2010)… ………...15

United States v.Grober, 595 F. Supp. 2d 382 (DNJ, 2008)……………15

United States v. Kellum, 356 F.3d 285, 289 (3rd Cir. 2004)………….18,20

United States v. Lopez, 514 U.S. 549, 562 (1995)…………………...20

United States v. Polizzi, 549 F. 3d. 308 (E.D.N.Y., 2008)…………… 2, 6

United States v. Polouizzi, 2010 WL 3667647
(2nd Cir. September 22, 2010)…………………………………...….2

United States v. R.L.C., 503 U.S. 291, 305 (1992………………………20

*i*

United States v. Samas, 561 F.3d 108 (2nd Cir. 2009)......................17,18,19,20

United States v. Walker, 473 F.3d 71, 84-85 (3d Cir. 2007).................18

STATUTES AND RULES

18 USC § 1028(A)(b)...............................................................17

18 USC § 2252..............................................................14, 16

18 USC § 2252(a)(2)...........................................................11

18 USC § 2252(b)(1)......................................................*passim*

18 U.S.C. § 2259..............................................................4

18 USC § 3551(a)......................................................*passim*

18 USC § 3553(a)......................................................*passim*

18 USC § 3553(e)..............................................................19

18 USC § 3553(f)..............................................................19

18 USC § 3771(e)......................................................*passim*

18 USC § 3584..............................................................19

21 USC § 841(b)...............................................................17

21 USC § 841(b)………………………………………………...17

21 USC § 859………………………………………………….....17

21 USC § 860………………………………………………….....17

21 USC § 861………………………………………………….....17

Fed.R.Crim.P. 1(B)(11)……………………………………….....4

Fed.R.Crim.P. 32(d)(2)(B)…………………………………….....4

Fed.R.Crim.P. 35(b)…………………………………………....19

Fed.R.Crim.P. 60(a)(3)………………………………………....5

## ARTICLES

<u>A Quiet but Growing Judicial Rebellion Against Harsh Sentences for
Child Pornography Offenses- Should the laws be Changed</u>………………..16

<u>Defiant Judge takes on Child Pornography Law</u>, NYT, May 24, 2010…….16

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

UNITED STATES OF AMERICA,       :

     -against-                :         **No. 06-CR-22 (JBW)**

PIETRO POLIZZI,              :

        **Defendant.**

-----------------------------------------------------------X

## SECOND MEMORANDUM OF LAW IN REGARD TO
## PIETRO POLIZZI'S SENTENCING

## INTRODUCTION

      I am writing on behalf of my client Pietro Polizzi. Mr. Polizzi is scheduled for

sentencing before Your Honor on January 12, 2011. I assume that this Court and the

Government is familiar with the history of this case and will not repeat it here. The defendant

did file an extensive memorandum entitled "Joint Memorandum of Law in Support of the

Defendant Peter Polizzi's Rule 33 Motion and In Regard to his Sentencing and Rule 33 motion"

dated March 14, 2008 (ECF #135).[1] The government responded to this memorandum of law

entitled "Letter in Response to Defendant's Arguments and Court's Inquiry Regarding

Sentencing" dated March 14, 2008 (ECF #134). The defendant replied to this response entitled

"Reply to Response" dated March 24, 2008 (ECF # 137). Mr. Polizzi was sentenced by this

---

[1] I am providing the Court and the Government with a separate copy of this Memorandum for convenience's sake.
I am not including that Memorandum (ECF # 135) in the ECF filing..

Court to One Year and One Day on April 1, 2008. Both sides appealed. The defendant is now

before this Court for sentencing after the Second Circuit most recent decision that requires re-

sentencing by this Court. <u>USA v. Polouizzi</u>, 2010 WL 3667647 (2nd Cir. September 22, 2010)

Mr. Polizzi completed his original sentence in August, 2008. I will not repeat the items

discussed at that first sentencing or items this Court took into consideration at that sentencing

pursuant to 18 USC § 3553(a). This Court wrote extensively about Mr. Polizzi's background at

the first sentencing. <u>See, USA v. Polizzi,</u> 549 F. 3d. 308 at 323-325)(E.D.N.Y., 2008) I will

address items subsequent to his release from prison in August 2008 that are now relevant to Mr.

Polizzi's sentencing. The items not addressed here were discussed at the April 1, 2008

sentencing, and, of course, this Court became aware of during the trial of this matter in

September, 2007.

First, since his original sentence, Mr. Polizzi's wife Anna was diagnosed with cervical

cancer and received chemotherapy. (Attached as Exhibit A are her most recent medical records

from Wyckoff Hospital).[2] Pietro and Anna have been married for nearly forty years. Mr.

Polizzi is Anna's primary person to take her to her medical appointments. Mr. Polizzi and his

family are concerned that Anna will avoid needed medical care without her husband's constant

intervention. As you can see from her records, there are new concerns about her present

condition.

Secondly, social worker, Ken Cullen, MSW, has worked regularly with Mr. Polizzi since

his arrest in 2006, both before and after his incarceration. (Attached as Exhibit B) is a letter

dated December 21, 2010 that discusses Mr. Polizzi's most recent treatment by Mr. Cullen and

---

[2] I will not provide these records or the letters submitted by Ken Cullen,, MSW (Exhibit B) or Dr. Eric Goldsmith (Exhibit C) in the ECF filing due to the sensitive nature of those submissions. They will be provided in the mailed filings to the Court and the Government.

his improvement. While it is unclear what the Bureau of Prisons will do in Mr. Polizzi's case, sending him to the so-called Sex Treatment Programs at either Devens FCI or Butner FCI will be clearly detrimental for Mr. Polizzi. (See Defense Joint Memorandum attached, Exhibit 11 addressing the program at these facilities). These programs assume that the inmate is a sexual deviant. Anyone who refuses "treatment" is labeled as being in denial. Such a program would be counterproductive for Mr. Polizzi.

Thirdly, Dr. Eric Goldsmith, a psychiatrist who testified at Mr. Polizzi's trial also opined in a letter written on December 20, 2010 (Attached as Exhibit C) that Mr. Polizzi is a person suffering from Chronic Post Traumatic Stress Disorder who does not suffer from "sexually deviant thinking" or "pedophiliac tendencies". He further opined that Mr. Polizzi's interest in viewing pornography has to do with what he described as "attachment viewing". He applied this idea of "attachment viewing" to Mr. Polizzi when he wrote "an individual who may have been sexually abused as a child may solicit images of child pornography in which they can connect with." (p. 2 of Exhibit C) He saw no pedophilia or sexual deviancy in that individual. The scientific community had not yet developed sufficiently by the time of the trial to explain Mr. Polizzi's viewing in these terms.

I will address in more detail whether this Court has the discretion to sentence Mr. Polizzi in accordance with 18 USC § 3553(a) to a sentence than is "sufficient, but not greater than necessary" or must this Court sentence the defendant to at least five years in compliance with 18 USC § 2252(b)(1). I will not repeat the arguments made regarding Mr. Polizzi's background and history, as these matters have been extensively discussed already. I continue to believe that the present state of the law permits this Court, in its discretion, to sentence Mr. Polizzi to a sentence of fewer than five years.

# "VICKY"[3] IS NOT A CRIME VICTIM OF THIS DEFENDANT PIETRO POLIZZI

The probation office has supplemented the PSR with a fourth addendum to the probation report dated November 1, 2010. This submission included two letters from a young woman called "Vicky" who was a victim of child abuse. Her perpetrator, her father, had the abuse videotaped and the videotapes are now available on child pornography sites. Letters were also included in the PSR from Vicky's mother and stepfather[4]. The PSR does not suggest that Mr. Polizzi should be ordered to pay restitution to this child under 18 U.S.C. § 2259, and rightly so. Thus, it is not clear what purpose these letters are supposed to serve. As they do not qualify as "victim impact statements" for any offense for which Mr. Polizzi is to be sentenced, they should be stricken from the PSR.

Under Fed.R.Crim.P. 32(d)(2)(B), a PSR should contain "information that assesses any financial, social, psychological, and medical impact [of the offense] on any victim." These submissions are presented verbatim, without any "assess[ment]" by the Probation Office and for that reason alone do not belong in the PSR. But there is another, even more fundamental reason – that "Vicky" and others similarly situated are not "victims" of Mr. Polizzi's offenses within the meaning of Rule 32(d). Under Rule 1(b)(11), as used in the Federal Criminal Rules, the term "victim" means "a '"crime victim"' as defined in 18 U.S.C. § 3771(e)." Title 18 U.S.C. §3771(e), in turn, defines the term "crime victim," as part of a statute whose purpose is to provide victims of crimes with certain rights. The term "crime victim," as defined there, means a person <u>directly</u> and <u>proximately</u> harmed as a result of the commission of a Federal offense". 18

---

[3] "Vicky" is the pseudonym referred to by the Probation Department in the Fourth Addendum to the Probation Report received on November 1, 2010. She is believed to be the same person as the "Vicky" referred to in a hearing before this Court in the matter of <u>USA v. C.R.</u>, 09 CR 155(JBW) in October, 2010.

[4] Vicky's mother and stepfather testified in a hearing before this Court in October, 2010 in the case of <u>USA v. C.R.</u>, 09 CR 115(JBW).

U.S.C. §3771(e) (emphasis added). Under this definition, neither "Vicky" nor anyone similarly situated is a "victim" of any offense committed by Mr. Polizzi, as there is no "direct" and "proximate" connection between his offenses and any injury to her. Accordingly, her statement must be stricken from the PSR. Moreover, she has no right to speak or to be otherwise "heard" at sentencing. *See* Fed.R.Crim.P. 32(i)(4)(B), 60(a)(3).

It is of course beyond dispute that "Vicky" is a victim. As described in detail by her stepfather and mother in the hearing USA v. C.R[5], 09 CR 115(JBW) Vicky has suffered horrible psychological trauma as a result of being sexually abused by her father when she was a child. (Hearing, October 8, 2010, pp. 50-74) Her father, the perpetrator of this horrendous abuse, after years of being outside of this country's jurisdiction, was returned to the United States and faced prosecution for these crimes against Vicky. Based on the testimony presented at the October hearing, Vicky's father was found living in Canada after the December 2006 airing of a TV show called America's Most Wanted arrested and returned to the United States to face prosecution for his horrendous crimes against Vicky.. Although there is no indication of the length of the sentence, Vicky indicates that her father "is now locked up and I have some peace in knowing that he cannot hurt me again or anyone else" (p. 64)

At the hearing the stepfather testified that around the time of the television show, "a detective came to our home and revealed to my wife and daughter that these images were on the internet, and that they were the most downloaded child porn series on the internet". (p. 53) There is no evidence to suggest that a psychologist or psychiatrist was present to address the obvious trauma that Vicky would suffer at learning this information. There is no evidence to indicate whether Vicky or her mother or stepfather was required to view the images to

---

[5] Page references will deal with the hearing held before this Court in USA v. C.R.

corroborate their authenticity[6].There is no indication that anyone stopped to consider the ethical implications of telling about the scope of the child pornography series on the Internet that presented her images or its distribution

Undoubtedly, Vicky is a "crime victim" of her abuser, her father, as defined by 18 U.S.C. §3771(e) . Is there any rationale to place Mr. Polizzi in the same category as her abuser? What is meant by the terms in the statute that the harm caused to a potential "victim" must be "direct" and "proximate"? The "conduct"[8] of a "passive viewer"[9] cannot place Mr. Polizzi in the same category, as Vicky's father. Any harm that the government's decision to tell Vicky about Mr. Polizzi's "conduct" may have caused her is quite the opposite of "direct" and "proximate."

This Court found that Mr. Polizzi was himself a victim of severe sexual abuse as a child. On the witness stand, Mr. Polizzi described his childhood experiences. USA v. Polizzi, 549 F. Supp. 2d 308 at 332 (E.D.N.Y., 2008) He broke down numerous times during his testimony. (Trial, p. 1047). Expert testimony elicited from Drs. Goldsmith and Cohen described the adult effect of Mr. Polizzi's childhood experiences. Dr. Goldsmith diagnosed Mr. Polizzi as suffering from post-traumatic stress disorder (PTSD) resulting from the sexual abuse. His symptoms, Dr.

---

[6] I am assuming that Vicky and her mother and stepfather were asked to view the images to confirm her identity. At Mr. Polizzi's trial, a stipulation was entered into that referenced the Vicky series of images. (Trial testimony, USA v. Pietro Polizzi, p. 458-459)

[8] I use the term "conduct" to mean in this case the downloading and possessing child pornography.

[9] I use the term "passive viewer" as this Court used that term in the C.R. hearing when referring to the activity of that defendant. (p. 34-36). I use this term with some trepidation because in Mr. Polizzi's case there is no evidence to indicate that he was actually a "passive viewer" of child pornography in the sense that he viewed the images for some type of sexual titillation. Instead, this Court accepted as true Mr. Polizzi's trial testimony that he was a victim himself of severe sexual abuse as a child USA v. Pietro Polizzi, 549 F. Supp. 2d 308 at 332(E.D.N.Y. 2008). There is evidence that C.R., on the other hand, did commit certain acts of sexual abuse.

Goldsmith found, were characteristic of PTSD. (Trial p. 1130)   For example, Mr. Polizzi
testified:

> Since I have this nightmares, a lot of nightmares actually, when you have those
> nightmares when you have, when you see--- photos so, you know, you smell
> certain smells, the events come back and I told this nightmare that I have and told
> me if I slept well, when the time comes, when I go to sleep, I go to sleep very
> exhausted, because the crime that is involved, you know the fear, it makes you, it
> takes everything out of you, which left you with very sadness and no kind of
> strength. (Trial at 1060)

Dr. Goldsmith, after learning of the childhood sexual abuse, was able to make sense of Mr.

Polizzi's prior reporting of his background and history.  He diagnosed that Mr. Polizzi as

suffering from a psychological trauma caused by his having been a victim of childhood sexual

abuse  which resulted in his having a major mental illness (PTSD)  (Trial p. 1157)  Dr.

Goldsmith further found that Mr. Polizzi's "viewing of child pornography on the Internet had a

re-traumatizing effect.  In a regressed and obsessive state he downloaded and searched child

pornographic images for evidence of victimization, something he had experienced as a child."

Exhibit D[10], (Dr. Goldsmith's Addendum Psych. Rep. p. 1, Jan. 2, 2007)

Dr. Cohen found Mr. Polizzi to have low cognitive abilities as well as an obsessive

compulsive disorder where the defendant possessed tens of thousands of items, including sports

cards, videos, CDs, stamps, as well as pornography both child and adult.  (Trial, p. 888)  Dr.

Cohen found that Mr. Polizzi lacked any insight into his obsessions and compulsions to hoard

these materials. (Trial, p. 856)  Dr. Goldsmith corroborated Dr. Cohen's findings.  Like Vicky,

Mr. Polizzi, is himself an enduring victim of childhood sexual abuse who suffers up until today

---

[10] Exhibit D will not be included in the ECF filing due to the nature of the content of the report.

from post traumatic stress disorder. Vicky's suffering is not a direct or proximate effect of his misconduct.

A clinical psychologist, Dr. Randall Green, was asked by the Department of Justice[11] to conduct an evaluation of Vicky, apparently for purposes of testifying in proceedings like the one this Court conducted in USA v. C.R.. (October 8, 2010, Hearing, p. 3)   Dr. Green received his degree in clinical psychology in Portland, Oregon in 1982 from the Western Conservative Baptist Seminary.  His specialty is treating and/or assessing survivors of trauma of all types including sexual abuse. (Hearing, p. 3)   He diagnosed Vicky with a "Type One Trauma." A Type One Trauma, as described by Dr. Green, is a trauma "with a beginning and an end to it that is experienced as an invasive trauma where the victim or survivor of such experience feels powerless, helpless, and violated". (Hearing p. 9)    While Dr. Green is talking about Vicky, he just as easily could have been talking about Mr. Polizzi who suffered similar childhood experiences in Italy and who had, as testified to by Dr. Goldsmith suffered from similar psychological trauma. Dr. Goldsmith referred to the trauma as PTSD.  Attached as Exhibit E  is the Diagnostic and Statistical Manual of Mental Disorders (DSM-IV, Fourth Edition, § 309.81 Posttraumatic Stress Disorder).  While Dr. Green calls the trauma suffered by Vicky as a "Type One Trauma", he is clearly describing signs and symptoms identical to PTSD.

> "With survivors of trauma, and she [Vicky] is certainly in this category, it's like you have an adrenalized experience with the kind of invasive threat that is taking place and the horrific things happening.
>
> So it's kind of like one part of your nervous system has your foot on the gas peddle and it's adrenalizing your system and the other foot is on the brake and it's essential to even come up with a diagnosis of post traumatic stress disorder that you have both of those characteristic dynamics. The—for Vicky, regarding the arousal, the hyper arousal, she was having nightmare, she was having night

---

[11] Apparently, Dr. Green was first approached by Ms. Hepburn a lawyer for Vicky's mother.

terrors. She was having anxiety. She was having flooding of anxiety, what we call panic attacks." (Hearing p. 10)

At trial, Dr. Goldsmith described the symptoms that he saw in Mr. Polizzi supporting the diagnosis of PTSD.

> "They had to be traumatized to such an extent that they were threatened with bodily harm or the integrity of their body. There had to be an associated fear or helplessness. That is the kind of stressor that makes it a post traumatic stressor.
>
> . . .
>
> Then following that trauma there are a number of clinical experiences that patients who have PTSD go through. There are the nightmares, wherein the middle of the night, there is the reliving of the experience, the dreaming about what happened to them.
>
> So for Mr. Polizzi, he talked about how certain times of the year, certain smells that were familiar to him from back in Italy that he associated with having been sexually abused, would trigger the memories and the emotions.
>
> Then there is this, of course, the avoided behaviors. You want to—you kind of organize your life to avoid any triggers that would happen that would bring back the traumas to the memory.
>
> And then there is this kind of very sad mood disturbance that people with PTSD have this combination of kind anxious hyper arousal, you know being nervous on guard, even being paranoid about things that could happen to them, but always really kind of void of emotion, very detached, really having a difficulty connecting with people in a meaningful way.
>
> You could go through the motions of life but there is a kind of blankness that is present that you see in chronic PTSD". (Dr. Goldsmith, trial testimony, pp. 1158-1159)

Dr. Goldsmith later describes how Mr. Polizzi's PTSD related to the downloading of child pornography:

> "It's [PTSD] what draws him to the images. He is on the internet. The images come across the screen, he's searching and looking at what this is, he sees it, and it brings him back to that place where he was abused himself.

His, you know, his level of sophistication, the way that his mind operates is again very concrete, extremely unsophisticated, old world, even having the idea that looking at the images, that he might see his own picture, that it might be there, and this would cause him to look, frightening him to the extent that he never saw anything like this before, and because he was abused as a child his image could be up there, even though rationally this makes no sense." (pp. 1161-1162)

In a similar vein, Dr. Green noted that Vicky's knowledge of the internet traumatized her. Mr. Polizzi was not the one who provided her with that knowledge. Dr. Green related that Vicky believed that she could be identified by someone viewing the pornographic videos of her, (pp. 13-15) despite the fact that the videos were made many years before. The idea that she could be identified years later makes little more sense than Mr. Polizzi's belief that his picture could have been on the Internet. Such irrational beliefs are consistent with the PTSD diagnosis. Mr. Polizzi did not cause Vicky to suffer from PTSD, "directly and proximately" or in any other way. Dr. Green moreover described symptoms in Vicky consistent with PTSD, although he did not use the nomenclature.

"She [Vicky] is very hypervigilent with regard to the attitudes of males. Woe be to the male who makes a wrong move in a dating situation.

I think she hit one guy and kneed another guy. So her distrust is profound. She hasn't even gotten to my knowledge to any attempt at an ongoing significant relationship where there might be physical activity, sexual issues, which will be profound. Her tolerance I think of behavior that won't trigger her is very narrow. So in that regard, she is very psychologically brittle. As long as everything lines up just right and doesn't trigger a reactivator that is one thing, but she is very brittle." (p. 16)

Mr. Polizzi, himself a victim of childhood sexual abuse, who referred to the child pornography videos as "garbage" (Trial, pp. 1086, 1111), has not victimized Vicky within the meaning of 18 USC § 3771(e). The "Vicky" materials should be stricken from his PSR and excluded from his sentencing.

## DISTRIBUTORS OF CHILD PORNOGRAPHY

Distributors of child pornography, who put the material out on the Internet for distribution, usually do so for financial, gain. Although they are criminally responsible, they are often unable to be subject to be prosecuted in American courts. Title 18 USC § 2252(a)(2) does assign to them sentences similar in length to people who receive this material. 18 USC § 2252(b)(1). While punishment may exist, the difficulty of locating the distributors remains extremely difficult. The United States Department of Justice indicates the production of "child abuse images has now become easy and inexpensive. The Internet allows images and digitized movies to be reproduced and disseminated to tens of thousands of individuals by a click of a button. The distribution and receipt of such images can be done almost anonymously. As a result, child pornography is readily available through virtually every Internet technology".[12] Of course, the ease of availability makes locating the child pornographer distributor virtually impossible. The need for worldwide government cooperation is essential. The ease of distributors moving from one web site to another makes removal of these web sites next to impossible. Finding an actual distributor, often located in a foreign country, is a further handicap for prosecuting the distributors.

Mr. Polizzi's belief that law enforcement's mere knowledge of this material on the Internet would give them the wherewithal to have these sites quickly removed from the Internet and the distributors identified and prosecuted. At Mr. Polizzi's trial, Polizzi testified about his naive view of law enforcement's ability to shut down child pornography Internet sites:

> "I mean whoever put this kind of material in there should be brought to justice
> because this is not right, because no one close to me should not have cause to

---

[12] See U.S. Department of Justice website www.http.//usdoj-crm.ceos.

others, because my life all the fear, all the nightmares, and everything else involved comes from this, and if it's nothing be done about this, a lot of innocent children will be raped because of this" (Trial, p. 1050)

Mr. Polizzi asked the agents at the time of his arrest what they will do about the child pornography material he had:

"When I spoken to one of the agents they say is nothing that we can do about it. When he say those words, he go through my heart, nothing you can do about it, which mean nothing you can do about it, there is something on the internet and freely to me I lost all the, you know, I feel like regaining the trust to tell this, when I heard those kinds of words I withdraw from where I was, I did all of this for nothing. In my mind we can help these children, because—oh boy, God—if you only know by watching those pictures, those images, every people tells a story there.

If one in this Court will be in a situation that I was, it would tell what was in there, but you never been in that kind of situation you not see that." (Trial pp. 1050-1051)

Mr. Polizzi was of course incorrect into believing that the government had the ability to readily remove child pornography from the Internet. One only has to look at the present case of Justin Assuange, the founder of the website "WikiLeaks" to realize how little control the U.S. Government has on the distribution of even Top Secret labeled government material. In that case, even if the government had the actual ability to stop United States search engines[13] that are used for the distribution of the "Wikileaks" website, there are numerous international search engines that can still distribute this material to a worldwide audience.

Blocking material from getting to consumers is a difficult proposition, in this country, with clear First Amendment considerations. Other countries, as well as ours, would also have a difficult time balancing free speech considerations in the field of child pornography. Even in this

---

[13] At the very least, a substantial First Amendment concern exists.

field reprehensible material may satisfy some First Amendment considerations and leave open

issues of debate requiring due process considerations before our government may restrain the

access to this material.

It remains another question whether Vicky and other similarly situated children whose

pornographic images appear on the Internet, would be "victims" as that term is defined in 18

USC § 3771(e) as it would relate to Internet distributors. The subject children most likely are

unknown to the distributors. The distributors do not publicize directly to the victims of child

abuse that they are on the Internet. In this case, Vicky learned that she was on the Internet from

her own personal viewing of the website.[14] (Hearing, October 8, 2008, p. 52) Whether Vicky is

an appropriate "victim" for 3771(e) purposes is unlikely as it would apply to the distributors of

child pornography.

## VICKY'S RETRAUMITIZATION OCCURRED FIRST BECAUSE OF HER INITIAL VIEWING OF THE CHILD PORNOGRAPHY WEB SITE AND SECONDLY BY THE GOVERNMENT CONTINUAL USE OF VICKY AS A PURPORTED VICTIM IMPACT WITNESS IN THESE TYPES OF CASES

It appears from reading the transcript of the hearing of USA v. C.R, 09 CR 155(JBW),

before this Court in October, 2010 that Vicky initially viewed the website independently on

Valentine's Day in either 2005 or 2006. (Hearing, October 8, 2010, p. 52) The stepfather, then

after attempting to "pull anything up" off the computer called the police who used a "forensic

expert found images on both hard drives within the computer".[15] (p. 52) Thousands of images

were on the computer. The police then intervened notifying the producers of America's Most

---

[14] It is unclear why Vicky viewed the website in the first place. No questions were asked about this subject at the hearing by any of the parties. Was it due to a morbid curiosity? If so, was it in substance any different from the reason Mr. Polizzi viewed the website? Could Vicky's actual viewing of the website be bizarrely illegal under the government's interpretation of 18 USC § 2252(a)? How can the government argue that Mr. Polizzi, if his viewing was due to curiosity and not for any sexual titillation more criminally culpable than Vicky?

[15] It was left unexplained at the hearing whether the material was on the computer through downloading by Vicky from the Internet or from the father/abuser, who downloaded these horrendous crimes against Vicky.

<u>Wanted</u>, a popular television show, that Vicky's father was wanted for the crimes he committed against Vicky. The father was subsequently arrested and prosecuted. (pp. 52-54)

It is certainly accepted that Vicky, learning that her father videotaped his sexual encounters with her when she was a small child, must have been shocked and traumatized. Certainly, as explained by Dr. Green[16], Vicky suffered from a PTSD re-traumitization after learning that her images were on the Internet. Learning that her father was involved in distributing the sexually explicit material was obviously traumatic. (Hearing, October 8, 2010, pp. 13-14). The arrest and conviction of the father and its publicity, if any, surely could have caused Vicky even greater psychological trauma. One would hope that the government and the police would have treated her with sensitivity.

I would question whether Vicky is best served as a witness to each of the numerous defendants who view child pornography. Vicky's letters that appears in the PSR is evidently used by the Probation Department in every child pornography case, irrespective of the unique circumstances of the individuals before the Court. Many, if not most, are the people that 18 U.S.C.§ 2252 is attempting to locate and prosecute, "child molesters" and "sex abusers" that are referenced in the statute's legislative history[17]. Still, there are people like Mr. Polizzi who clearly as this Court has found and is simply true about this defendant, is neither a "child molester" nor a "sexual abuser". In fact, Mr. Polizzi is a victim of child abuse and suffers from PTSD.

---

[16]  It appears that Dr. Green, who came from a different city than Vicky was used to provide services relating to the civil litigation piece of this case (p.21) and not to provide her with primary psychological counseling. One can only hope that counseling was provided in Vicky's home town for the extensive trauma caused by the father and the further trauma of learning that this material wound up on the internet.
[17]  See the 1996 and 2003 legislative history of Sexual Exploitation and Other Abuse of Children's Acts of 1996 and 2003.

This one size fits all that the probation department and by extension the government wishes to use fails to consider the individual characteristics of the defendant before the Court. For the probation department, the reason why a person may have downloaded child pornographic images, is seemingly irrelevant. The probation department's use of provisions of U.S.S.G. § 2G2.2 customarily enhances the offense level at least some 11 points has been criticized by two recent Court of Appeals decisions. The Second Circuit in USA v. Dorvee, 616 F.3d 174 (2nd Cir. 2010) found that a sentence where the total offense level was raised by the Guidelines from 22 to 39 with a Guideline range of 262 to 327 months as being unreasonable. The District Court, who was dealing with a sentence range of 0 to 20 years sentenced Dorvee to the maximum twenty year sentence despite the defendant's mental health issues and the unlikelihood that he would initiate sexual contact with a child (Id. at 183, 184). The Second Circuit found the 20 year sentence unreasonable and sent the case back to the District Court for re-sentencing. The Third Circuit in USA v. Grober, 624 F. 3d 592 (3rd Cir. 2010), upheld a District Court sentencing of five years (the statutory mandatory minimum sentence) concluding that the judge provided a "compelling explanation for its policy concerns about § 2G2.2 and its justification for imposing a sentence outside the range § 2G2.2 recommended". (Id. at 15) The District Court in Grober, Judge Hayden, was asked in a brief by one of his lawyers "have we gone mad" when discussing the length of sentences sought by the government. USA v.Grober, 595 F. Supp. 2d 382 (DNJ, 2008) Judge Hayden answers the question "No, but the need for an examination of the guidelines is manifest so that district judges' "most important judicial responsibility", citing USA v. Faulks 201 F. 3d 208 at 209 (3rd Cir. 2000) is guided by a sentencing protocol that is consonant with reason and fairness". USA v. Grober, 595 F. Supp. at 412. While Judge Hayden recognized in that case "that Congress has imposed a mandatory minimum" (Id. at 412),

Judge Hayden did not address but implied that the imposition of the five year sentence was reasonable and fair. In Mr. Polizzi's case, such a sentence is not reasonable or fair. This Court need not impose a sentence that is unreasonable and unfair. This Court can exercise its discretion so that it can do justice.

One additional point will be addressed before discussing whether this Court has the authority to sentence Mr. Polizzi to a sentence below the sentencing provisions of 18 U.S.C. § 2252(b)(1). Senator Arlen Specter recently gave a speech about child pornography laws and whether mandatory sentences in those types of cases are reasonable and fair. (See, Exhibit F , A Quiet but Growing Judicial Rebellion Against Harsh Sentences for Child Pornography Offenses-Should the laws be Changed) He cites the Grober and Dorvee decisions discussed above as well as an article in the New York Times by Arthur Sulzberger entitled Defiant Judge takes on Child Pornography Law, May 24, 2010. The judge referred to is Your Honor.[18]

## CAN THIS COURT SENTENCE MR. POLIZZI IN ACCORDANCE WITH 18 U.S.C. § 3553(a) DESPITE THE MANDATORY MINIMUM PROVISION OF 18 U.S.C. § 2252?

The seemingly mandatory five-year terms for receiving child pornography are not binding on this Court. 18 U.S.C. § 2252  By statute, 18 U.S.C. § 3551(a), the Sentencing Reform Act trumps all inconsistent federal sentencing provisions, unless otherwise "specifically provided".  The penalty provisions of 18 U.S.C. § 2252A do not "specifically" provide that they should supersede other inconsistent laws, so § 3551(a) ought to control.  That provision, § 3551(a), in turn, makes mandatory 18 U.S.C. § 3553(a), as the controlling sentencing provision. Under § 3553(a), the court's obligation is to impose a sentence which the court in its discretion

---

[18] I find the use of the term *defiant* in the headline offensive and unfair.  A judge attempting to craft a sentence that is reasonable and fair needing to apply to the unique individual before the court is not an act of "defiance" but is in fact as Judge Hayden notes in Grober the "most important judicial responsibility".  Not paying lip service to this "most important responsibility" is actually this Court's, and every Court's obligation.

concludes is "not greater than necessary," so long as the sentence imposed is "sufficient" to satisfy the purposes of sentencing. Inconsistent provisions, such as § 2252A(b) are thus, in this complex multi-statute scheme, made matters for the Court's "consider[ation]" under § 3553(a)(3), but shall not be treated as mandatory.

This Court has authority pursuant to 18 U.S.C. §§ 3551(a) and 3553(a), notwithstanding id. § 2252A(b)(1), to impose a sentence for Mr. Polizzi's convictions on Counts 2, 3, 6 and 9 under id. § 2252A(a)(1) and (a)(2)(A) of less than five years' imprisonment. § 2252A(b) states, in pertinent part, that "Whoever violates ... paragraph (1) [or] (2) ... of subsection (a) shall be fined under this title and imprisoned not less than 5 years and not more than 20 years" for a first offense. In light of section 3551(a), which is the statutory gateway for all federal sentencing, the terms of § 2252A(b) do not establish a true "mandatory minimum" sentence requirement.

Section 3551(a) of title 18 requires the court at every sentencing to apply the Sentencing Reform Act, including the parsimony clause of § 3553(a), "[e]xcept as otherwise specifically provided" by law. Some "mandatory minimum" laws do "specifically provide" that such general provisions as § 3553(a) must not be applied. See, e.g., 18 U.S.C. § 1028A(b) (minimum term for aggravated identity theft applies "Notwithstanding any other provision of law ...."). In addition, as the Second Circuit held in United States v. Samas, 561 F.3d 108, 110-11 (2d Cir. 2009), the mandatory minimums in 21 U.S.C. § 841(b) of Controlled Substances Act also qualify. That statute begins, "Except as otherwise provided in section 859, 860 or 861 of this title, anyone who violates subsection (a) of this section shall be sentenced as follows:," and goes on to say that "Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person sentenced under this subparagraph." (emphasis added)   In such cases, mandatory minimum sentences do not conflict with § 3553(a) and may be enforced.  See also

<u>United States v. Walker</u>, 473 F.3d 71, 84-85 (3d Cir. 2007), (holding that § 3553(a) does not supersede 18 U.S.C. § 924(c)).

Section 2252A, by contrast, lacks any "notwithstanding any other provision of law"-type proviso, however. Absent such language, the sentencing court is only bound to "consider" the so-called mandatory sentence, as a type of sentence that is "available." 18 U.S.C. § 3553(a)(3). Accordingly, this Court is not required to limit the exercise of its penalizing discretion to sentences at or above five years.

The Second Circuit decision in *Salas* cannot be read broadly, as it was decided on a "plain error" basis, 561 F.3d at 110, whereas here the issue is being raised on a timely basis before the sentencing court. Moreover, the Court in *Salas* relied on a Third Circuit decision, <u>United States v. Kellum</u>, 356 F.3d 285, 289 (2004), which is no longer good law. When *Kellum* was decided, the incompatibility between the "shall" command of 18 U.S.C. § 3553(a) (to impose no sentence which is "greater than necessary") and the "shall" found in such provisions as id. § 2252A(b)(1) ("shall be ... imprisoned not less than 5 years"), for all intents and purposes, did not exist. This is because, before 2005, the "shall" in § 3553(a) was never independently enforced. Prior to <u>United States v. Booker</u>, 453 U.S. 220 (2005), courts had dealt with the apparent conflict between the "shall" in § 3553(*a*) and the seemingly inconsistent "shall" in 18 U.S.C. § 3553(*b*) (to impose a sentence in every case within the Guidelines, even when "greater than necessary," unless extraordinary facts justified a departure) by subordinating the former to the latter so completely as to utterly negate any mandatory quality of § 3553(a)'s parsimony clause. Thus, the pre-<u>Booker</u> decision in <u>Kellum</u> expressly treated the parsimony clause of § 3553(a) not as a command, which is how Congress wrote it, but merely as one of "a number of ... factors that a sentencing court must consider ...." 356 F.3d at 288. With § 3553(b) excised by

18

<u>Booker</u>, that approach is no longer permissible. The parsimony provision of § 3553(a) now provides the "overarching instruction," <u>Kimbrough v. United States</u>, 552 U.S. 85, 128 S.Ct. 558, 563 (2007) -- except under sentencing statutes which "expressly provide" that the general provisions of the Sentencing Reform Act shall not apply.

Echoing <u>Kellum</u>, 356 F.3d at 289, <u>Salas</u> also suggests, 561 F,3d at 111, that the existence of subsections (e) and (f) of § 3553 shows that subsection (a) does not supersede any mandatory statutory penalty. But neither § 3553(e) (substantial assistance reduction) nor § 3553(f) (safety valve) states that sentences below a mandatory minimum are prohibited except as authorized therein. Nor does either state that it is the exclusive mechanism authorizing a sentence below an otherwise-stated mandatory minimum; indeed, neither subsection even refers to the other. And there is no other provision of law stating that these two subsections are the only two paths to a below-"minimum" sentence. In fact, they are not; at least two others exist. See, e.g., Fed.R.Crim.P. 35(b); and USSG § 5G1.3 (implementing 18 U.S.C. § 3584 so as to authorize imposition of sentence below mandatory minimum to achieve concurrency). Moreover, we do not argue that all mandatory minimums were repealed by the Sentencing Reform Act. The argument is simply that § 3551(a) provides the general rule for determining which mandatories can co-exist with the Act, and which cannot. Where a statute contains a mandatory minimum and "specifically provide[s]" that inconsistent provisions of the Sentencing Reform Act are inapplicable (such as by inclusion of an introductory "notwithstanding any other provision of law" clause), such provisions control a judge's discretion unless § 3553(e), § 3553(f), or some other "safety valve" applies. The mere existence of those subsections does not refute Mr. Polizzi's argument.

There is no indication in the Kellum decision, or in Salas, that the Court was presented with the argument set forth here (in effect, the difference between a law which "otherwise provides" and one which "otherwise *specifically* provides"). In fact, it appears from the decision that appellant Kellum failed to address § 3551(a) at all. See 356 F.3d at 289.) For all these reasons, based on a careful reading of all the pertinent statutory provisions and reconciling them as internally consistent, as we are bound at least to try to do, imprisonment for five years is not truly a mandatory minimum term in this case.

Even if there were some ambiguity in the relationship between §§ 3551(a)-3553(a) and §2252A(b)(1), such as in how clear and explicit a "notwithstanding" clause has to be to qualify as "specifically provid[ing]" for non-applicability of the Sentencing Reform Act, that doubt would have to be resolved in favor of lenity. See United States v. R.L.C., 503 U.S. 291, 305 (1992); Busic v. United States, 446 U.S. 398, 406-07 (1980) (lenity rule applies to construction of criminal penalty provisions). In addition, as the defendant has previously argued, imposition of a five year prison sentence which does not, in a given case, serve the legitimate criminal justice purposes articulated in § 3553(a)(2) and which is "greater than necessary," would constitute cruel and unusual punishment, in violation of the Eighth Amendment, and violate constitutional principles of equal justice and separation of powers. The presence of these constitutional questions in the background, which would arise if the statutory argument does not prevail, also counsels in favor of adopting the defendant's statutory construction. See United States v. Lopez, 514 U.S. 549, 562 (1995) (avoidance of unnecessary constitutional issues); Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 348 (1936) (Brandeis, J., concurring); see also Jones v. United States, 526 U.S. 227, 239-40 (1999) (related doctrine of "constitutional

doubt"). For all these reasons, the supposed "minimum" sentence in § 2252A(b) is not "mandatory."

18 U.S.C. § 3553(a) requires that this Court "shall impose a sentence sufficient, but not greater than necessary", to comply with the purposes set forth in paragraph (2) of this subsection. I will not repeat the original sentencing memorandum prepared in this case and attached herein.. I shall only note that Mr. Polizzi's personal circumstances are more difficult now, then at the original sentence in April, 2008, due to his wife Anna's cancer. It is clear that Mrs. Polizzi depends upon her husband for guidance and support for her medical conditions. Also, Mr. Polizzi who has not seen his father, since before this case began in 2006, is in poor health and unable to travel to the United States. Mr. Polizzi's parents live in Italy. This Court after reviewing all of the material prior to the original sentence, imposed a sentence of one year and one day which was completed in August, 2008. Mr. Polizzi is presently on probation, without any violations, has developed a positive relationship with his therapist Ken Cullen, M.S.W. and has addressed successfully the traumatic childhood experiences he lived through in Italy. I would argue that there is no societal need to send this person back to prison. I do not believe that the law requires that this court return Mr. Polizzi to prison.

Authorized sentences is defined under 18 U.S.C. § 3551(a).

> "Except as otherwise specifically provided, a defendant, who has been found guilty of an offense described in any Federal statute, . . ., shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraph (A) through (D) of section 3553(a)(2) to the extent that are applicable in light of all the circumstances of the case.

There is nothing in 18 USC § 2252(b)(1), the child pornography sentencing provision, that *specifically* requires that for purposes of sentencing, the provisions of 3553(a) that is, that

the sentence should be "sufficient, but no greater than necessary" is inapplicable because there is a mandatory minimum sentence that is silent on the effect of 3553(a). Does a mandatory minimum provision require that the sentencing Court be forced to put aside, as Judge Hayden said in Grober, its "most important judicial responsibility". I submit when there is a conflict of two statutes, as there is in this case, § 3551 and the sentencing provision of § 2252(b)(1), the Court should side with its ultimate responsibility to sentence in a way that the Court deems reasonable and just. A sentence of five years for Mr. Polizzi is simply unfair and unreasonable.

## **CONCLUSION**

For all of the reasons discussed above, this Court should impose a sentence of Time Served for the One Year and One Day the Court had imposed on April 1, 2008.

Respectfully submitted,

MITCHELL DINNERSTEIN, ESQ
Attorney for Defendant, Pietro Polizzi
350 Broadway
Suite 700
New York, New York 10013
212-925-0793

*On the memorandum*
*Peter Goldberger*
*Of Counsel*