# EXHIBIT F

# A Quiet but Growing Judicial Rebellion Against Harsh Sentences for Child Pornography Offenses – Should the laws be changed?

SENATOR ARLEN SPECTER

Federal criminal sentences should be "sufficient, but not greater than necessary."[1]  They should fit the crime, provide for "adequate deterrence," "protect the public," and promote rehabilitation.[2]  Since the Supreme Court decisions in *Booker* and *Kimbrough*,[3] federal courts again have great discretion, within certain limits, to decide appropriate federal sentences.  Congress, however, has taken pains to limit that discretion with regard to child pornography offenses, and the federal courts, in a series of judicial decisions across the country including recent 2nd and 3rd Circuit decisions, are firmly rebelling.[4]  The question is: are the courts right?  Has Congress gone too far it its desire to punish this undesirable type of criminal conduct?

## A history of escalating penalties

In 2009, the Sentencing Commission released a report that surveyed the history of child pornography sentencing, revealing a pattern of direct congressional action that has increased penalties severely over the past 25 years.[5]  Congress has prompted revisions of the Guidelines nine times since 1987, and each time mandated steeper penalties.[6]  Over that time, the base offense level for transportation, distribution, and receipt offenses has increased from 13 to 22, and the base level for possession has increased from 10 to 18.[7]  Various sentencing enhancements, many of which apply to nearly all offenders, only increase sentences further.[8]  The number of convictions also has exploded, rising from a few dozen each year in the 1990s, to more than 1,600 in 2008 alone.[9]

When addressing child pornography, Congress has tended to bypass the Sentencing Commission. In 1991, for example, the Commission argued that its current child pornography Guidelines were stringent enough and noted that the high rate of downward departures indicated that judges and prosecutors felt that the penalties already were too severe.[10]  Congress nevertheless instructed the Commission to increase base offense levels.[11]  The same pattern was repeated in 1995 and 2000.[12]  Each time, Congress added or expanded various sentencing enhancements, including an enhancement for use

---

[1] 18 U.S.C. § 3553(a).
[2] 18 U.S.C. § 3553(a)(2) (setting out factors to determine "the need for the sentence imposed").
[3] *United States v. Booker*, 543 U.S. 220 (2005); *Kimbrough v. United States*, 552 U.S. 85 (2007).
[4] See *United States v. Dorvee*, 616 F.3d 174, 186 (2d. Cir. 2010); *United States v. Grober*, 2010 WL 4188237, *9 (3rd Cir. 2010).
[5] See generally United States Sentencing Commission, *The History of the Child Pornography Guidelines*, Oct. 2009, *available at* http://www.ussc.gov/general/20091030_History_Child_Pornography_Guidelines.pdf.
[6] *Id.* at 1-2.
[7] *Grober*, 2010 WL 4188237, at *9 (discussing *History of Child Pornography Guidelines, supra* note 5).
[8] See *Dorvee*, 616 F.3d at 186.
[9] A.G. Sulzberger, "Defiant Judge Takes on Child Pornography Law," NEW YORK TIMES, May 24, 2010, *available at* http://www.nytimes.com/2010/05/22/nyregion/22judge.html.
[10] *History of Child Pornography Guidelines, supra* note 5, at 21.
[11] *Id.* at 22.
[12] *Id.* at 26, 32-33.

of the computer in the commission of the offense, which the Commission warned would apply equally regardless of whether an offender sent one image by email or trafficked in hundreds of images online.[13]

The process peaked when Congress passed the PROTECT Act of 2003, which was "the first and only time to date [Congress] directly amended the guidelines."[14]  It did so "apparently without seeking any input from the Commission."[15]  It instructed the Sentencing Commission to include various sentencing enhancements for child pornography crimes, and established statutory mandatory minimum and maximum sentences for possession and distribution.  According to the Commission, the changes more than doubled the average sentences for child pornography crimes.[16]  A former United States Attorney for the Eastern District of New York described the PROTECT Act as "the most significant effort to marginalize the role of the Sentencing Commission in the federal sentencing process since the Commission was created by Congress."[17]

## Impact of congressional action

As a result of Congress' actions, today the Sentencing Guidelines for child pornography often exceed those recommended for more serious crimes.  By the time a court tallies a defendant's base offense level and the slew of enhancements "that are all but inherent to the crime of conviction," the current child pornography Guidelines almost always recommend sentences at *or exceeding* the statutory maximum sentence.[18]  A first time offender who is convicted of distributing child pornography typically can expect a recommended sentence of 168 to 210 months, almost the same as the 240-month maximum.[19]  The statutory minimum sentence becomes a meaningless number as first time offenders under the Guidelines receive substantively identical sentences as hardcore offenders.

*Even more glaring, the sentence for an adult who actually has sex with a child would result in a lower Guidelines sentence: just 151 to 188 months.[20]  Similarly, a first time possession charge increased, by the use of the computer and the multiple image enhancements which typically apply in most cases, to an offense level of 23, qualifying the child pornography offender for the same sentence as for aggravated assault with a firearm resulting in bodily injury.[21]*

The fact that child pornography offenders can be given longer sentences than child abusers reflects a lack of care by Congress.  In the rush to prove itself hostile to individuals who possess or distribute child pornography, Congress has obscured the real distinctions between different offenders.  In the words of the Second Circuit, the current Guidelines were "cobbled together," rather than drafted with purpose.[22]

---

[13] See United States Sentencing Commission, *Report to the Congress: Sex Offenses Against Children* at 30, June 1996, *available at* http://www.ussc.gov/r_congress/SCAC.pdf.
[14] *History of Child Pornography Guidelines, supra* note 5, at 38; see also United States Sentencing Commission, *Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice System Is Achieving the Goals of Sentencing Reform,* 2004, at 72, *available at* http://www.ussc.gov/15_year/chap2.pdf.
[15] *Grober,* 2010 WL 4188237 at *10.
[16] See *id.* (discussing *History of Child Pornography Guidelines, supra* note 5).
[17] See Alan Vinegrad, *The New Federal Sentencing Law,* 15 Fed. Sent. R. 310, 315 (June 2003).
[18] See *Dorvee,* 616 F.3d at 186-87.
[19] *Id.*
[20] *Id.* at 187.
[21] *Id.*
[22] *Id.* at 186.

2

## Judicial Response

A recent survey of federal judges by the Commission found widespread dissatisfaction with the current child pornography Guidelines: 70% of respondents said the possession ranges were too high, 69% said the same for receipt, and 30% said the range for distribution was excessive.[23]  In a recent article in *The New York Times* the current Guidelines were described as "outrageously high" and "seriously flawed."[24]

Importantly, judges are using their discretionary sentencing powers under *Booker* and *Kimbrough* to indicate their disapproval.[25]  In 2007, federal judges departed downward - without government's consent - in child pornography cases 27.2% of the time.[26]  In 2008, the rate increased to 35.7%.[27]  In 2009, it increased to 43%.[28]  For other crimes, departure rates are 15.9%.[29]

In *United States v. Dorvee*, the Second Circuit indicated its strong objection to the Guidelines. The court threw out a sentence of 233 months for a first time offender who had never engaged in any sexual misconduct and who, according to all of the evidence, posed little or no direct threat to children.[30] The court held that the sentence was unreasonable under 18 U.S.C. § 3553(a) even though it technically fell within the Guidelines range.  More importantly, however, the court also engaged in an extensive discussion about the absurdity of the current Guidelines, effectively putting lower court judges on notice that they should ignore them.[31]

In *United States v. Grober*, the Third Circuit upheld a sixty month sentence - the statutory mandatory minimum - despite a Guidelines range of over 240 months.[32]  Like the Second Circuit, the court discussed the irrationality of the current Guidelines.  In particular, the court noted that the Guidelines for child pornography were "not developed pursuant to the [Sentencing] Commission's institutional role and based on empirical data and national experience."[33]  Below, the district court had endeavored but failed to find any justification for the Guidelines range.[34]

The lack of an empirical basis for the current child pornography Guidelines is a common theme among lower courts.  For example, in *United States v. Johnson*, a district court judge remarked that the

---

[23] United States Sentencing Commission, *Results of Survey of United States District Judges, January 2010 through March 2010*, June 2010, *available at* http://www.ussc.gov/Judge_Survey/2010/JudgeSurvey_201006.pdf.
[24] A.G. Sulzberger, "Defiant Judge Takes on Child Pornography Law," *supra* note 9.
[25] See *id.*; Shannon P. Duffy, "Appeals Courts Criticize Child Porn Sentencing Guidelines," THE LEGAL INTELLIGENCER, Oct. 28, 2010, *available at* http://www.law.com/jsp/article.jsp?id=1202474036131; Mark Hansen, "A Reluctant Rebellion," ABA J., June 2009, *available at* http://www.abajournal.com/magazine/article/a_reluctant_rebellion.
[26] 2007 Sourcebook of Federal Sentencing Statistics (2007), *available at* http://www.ussc.gov/ANNRPT/2007/Table28.pdf
[27] 2008 Sourcebook of Federal Sentencing Statistics (2008), *available at* http://www.ussc.gov/ANNRPT/2008/Table28.pdf.
[28] 2009 Sourcebook of Federal Sentencing Statistics 79 (2009), *available at* http://www.ussc.gov/ANNRPT/2009/Table28.pdf.
[29] *Id.* at 50, *available at* http://www.ussc.gov/ANNRPT/2009/TableN.pdf.
[30] *Dorvee*, 616 F.3d at 183-184.
[31] *Id.* at 184 ("unless applied with great care, [Guidelines] can lead to unreasonable sentences that are inconsistent with what § 3553 requires").
[32] 2010 WL 4188237 at *4, *15.
[33] *Id.* at *13.
[34] *Id.* at *3-*4.

increased penalties "do not appear to be based on any sort of empirical data, and the Court has been unable to locate any particular rationale for them beyond the general revulsion that is associated with child exploitation-related offenses.[35]  The same court criticized as "prohibited by law" the government's proffered statistics purporting to show that the defendant statistically was more likely to commit actual child abuse.[36]  In *United States v. Stern*, the court recognized that the use of "enhancements" that are present in almost all child pornography cases is "illogical."[37]  In another case, a court imposed a sentence of 72 months despite a Guidelines range of 210–262 months.[38]

Of course, for certain crimes, such as receipt of child pornography, Congress has established a high statutory mandatory minimum of five years.  Judges are powerless to depart downward in such cases because, unlike for drug cases, there is no safety valve provision.

## Conclusion

With judges and the Sentencing Commission arguing that the current child pornography Guidelines are too harsh, it is time that the issue receives greater public attention.  Unfortunately, given the nature of these crimes and the vulnerability of their victims, the prospects for legislative reforms are not promising.  In 1991, when Congress first inserted itself into the work of the Sentencing Commission, at least one brave lawmaker urged his colleagues to take seriously the expertise and warnings of the Commission.[39]  However, when the matter came to a vote, not a single member of Congress voted against it.[40]  It does not take a seasoned political operative to explain why.

Apart from continued judicial rebellion, what can be done?  At the very least, the public and lawmakers need to know the facts; they need to know how unfairly disproportionate child pornography sentences have become and how Congress' best intentions now mandate severe punishments for people who, in many cases, need counseling not imprisonment.  Given that the issue of child pornography generates strong emotions and fears in the public and in the press, establishing an independent commission with a strong mandate to study the problem from top-to-bottom and make recommendations for comprehensive change may be the best route.  Perhaps then Congress, armed with the right information, might act to do what needs to be done, just as Congress recently did when it passed the Fair Sentencing Act and revised the unfair 100-to-1 crack–cocaine powder disparity.  And even if Congress fails to act, public awareness of this issue might be the catalyst for change.

---

[35] 588 F.Supp.2d 997, 1003 (S.D. Iowa 2008) (citing Skye Phillips, *Protect Downward Departures: Congress and Executive's Intrusion into Judicial Independence*, 12 J. L. & Pol'y 947, 967-84 (2004)).
[36] *Id.* at 1005.
[37] 590 F.Supp.2d 945, 961 (N.D. Ohio 2008).
[38] *United States v. Hanson*, 561 F.Supp.2d 1004, 1008, 1012 (E.D. Wis. 2008).
[39] *History of Child Pornography Guidelines, supra* note 5, at 20-21.
[40] *Id.* at 20, 22.

4